**Electronically Filed
Supreme Court
SCAP-11-0001103
03-DEC-2013
08:31 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

SAMUEL L. KEALOHA, JR., VIRGIL E. DAY, JOSIAH L. HOOHULI, and PATRICK L. KAHAWAIOLAA, Petitioners/Plaintiffs-Appellants,

vs.

COLETTE Y. PI'IPI'I MACHADO, individually and in her official capacity as Chairperson and Trustee of the Office of Hawaiian Affairs; S. HAUNANI APOLIONA, ROWENA AKANA; DONALD CATALUNA; BOYD P. MOSSMAN; OSWALD STENDER; PETER APO; ROBERT K. LINDSEY, JR.; and JOHN D. WAIHE'E IV, individually and in their official capacity as Trustees of the Office of Hawaiian Affairs; and DANTE CARPENTER and WALTER HEEN, individually, Respondents/Defendants-Appellees.

SCAP-11-0001103

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CAAP-11-0001103; CIV. NO. 11-1-0575-03)

DECEMBER 3, 2013

RECKTENWALD, C.J., NAKAYAMA, ACOBA, AND McKENNA, JJ.,
AND CIRCUIT JUDGE KIM, IN PLACE OF POLLACK, J., RECUSED

OPINION OF THE COURT BY RECKTENWALD, C.J.

Samuel L. Kealoha, Jr., Virgil E. Day, Josiah L.

Hoohuli, and Patrick L. Kahawaiolaa (collectively, Plaintiffs),

brought this suit against Office of Hawaiian Affairs (OHA) trustees,[1] alleging that the OHA trustees improperly expended trust funds on Hawaiians, as opposed to native Hawaiians as defined by the Hawaiian Homes Commission Act (HHCA).[2]  Plaintiffs argued that these expenditures violated the OHA trustees' duty to expend trust funds "in the sole interest" of native Hawaiians, as required under Hawai'i Revised Statutes (HRS) § 10-3(1), §§ 4 and 5(f) of the Hawai'i Admission Act, and article XII, sections 4, 5, and 6 of the Hawai'i Constitution.

---

[1]      The OHA defendants are:  Colette Y. Pi'ipi'i Machado, individually and in her official capacity as Chairperson and Trustee of OHA; S. Haunani Apoliona, Rowena Akana, Oswald Stender, Peter Apo, Robert K. Lindsey, Jr., and John D. Waihe'e IV, individually and in their official capacities as Trustees of OHA; Donald Cataluna, individually; and Carmen Lindsey and Dan Ahuna, in their official capacities as Trustees (collectively, OHA trustees).  Plaintiffs' complaint named as defendants Machado, individually and in her official capacity as Chairperson and Trustee of OHA; Apoliona, Akana, Cataluna, Boyd P. Mossman, Stender, Apo, Robert K. Lindsey, Jr., and Waihe'e, individually and in their official capacities as Trustees of OHA; and Dante Carpenter and Walter Heen, individually.  The record indicates that Plaintiffs have since dismissed all claims against Carpenter and Heen.  Also, the OHA trustees stated that Mossman resigned from his position as OHA trustee during the pendency of the instant action, and was replaced by Carmen Lindsey.  Accordingly, Carmen Lindsey was substituted for Mossman as to claims against Mossman in his official capacity.  See Hawai'i Rules of Appellate Procedure (HRAP) Rule 43(c)(1).  It also appears that Plaintiffs are not alleging claims against Mossman in his individual capacity.  Dan Ahuna also replaced Cataluna as trustee in 2012.  See State of Hawaii, Office of Elections, Hawaii General 2012 Final Summary Report 2 (Nov. 6, 2012), http://hawaii.gov/elections/results/2012/general/elections/results/2012/general/files/histatewide.pdf.  Thus, it would also appear that Ahuna is substituted for Cataluna as to claims against Cataluna in his official capacity.  See HRAP Rule 43(c)(1).

[2]      As used in this opinion, "Hawaiian" includes individuals with some Hawaiian ancestry, but less than the 50% required to be a native Hawaiian under the HHCA.  Section 201(a) of the HHCA defines "native Hawaiian" as "any descendant of not less than one-half part of the blood of the races inhabiting the Hawaiian Islands previous to 1778."  Hawaiian Homes Comm'n Act, 1920, Act of July 9, 1921 (HHCA), Pub. L. 67-34, 42 Stat. 108, reprinted in 1 HRS 261 (2009).  For purposes of clarity, this opinion will use the term "native Hawaiian" as defined in the HHCA.  This opinion will also use the term "Hawaiian" as defined in HRS § 10-2 (2009): "any descendant of the aboriginal peoples inhabiting the Hawaiian Islands which exercised sovereignty and subsisted in the Hawaiian Islands in 1778, and which peoples thereafter have continued to reside in Hawai'i."

-2-

The OHA trustees filed a Motion to Dismiss the complaint, arguing that the Plaintiffs' claims were barred under principles of res judicata and collateral estoppel by the U.S. District Court's decision and judgment in Day v. Apoliona (Day II), No. 05-00649, 2008 WL 2511198, *7-14 (D. Haw. June 20, 2008) and the Ninth Circuit Court of Appeals' opinion and judgment in that case, 616 F.3d 918, 924-28 (9th Cir. 2010), both of which held that the challenged expenditures were proper under federal law. The OHA trustees also argued that even if res judicata and collateral estoppel did not bar Plaintiffs' claims, they failed on the merits for the same reasons as the claims set forth in Day II.

The circuit court dismissed the complaint, finding that it failed to state a claim upon which relief could be granted pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rule 12(b)(6). The Plaintiffs then filed a motion for leave to file an amended complaint "to correct the deficiencies identified by the court[.]" The circuit court denied the motion. Plaintiffs appeal from the circuit court's December 6, 2011 final judgment in favor of the OHA trustees.[3]

On appeal to this court, Plaintiffs raise the following points of error:

> (1) Whether the [circuit court] erred in dismissing the complaint for failure to state a claim?

---

[3] The Honorable Karl K. Sakamoto presided.

-3-

(2) Whether dismissal is appropriate on grounds of res judicata or collateral estoppel?

In deciding a motion to dismiss for failure to state a claim, courts must interpret the complaint in the light most favorable to the plaintiff, and should dismiss only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim that would entitle him or her to relief." County of Kaua'i v. Baptiste, 115 Hawai'i 15, 24, 165 P.3d 916, 925 (2007) (citation omitted). Applying that test here, we hold that the circuit court did not err in dismissing Plaintiffs' complaint.[4] We also hold that the circuit court did not abuse its discretion in denying Plaintiffs' motion for leave to file an amended complaint. Accordingly, we affirm the circuit court's December 6, 2011 judgment.

## I. Background

### A. Public trust funds

The Hawai'i Admission Act (Admission Act), Pub. L. No. 86-3, 73 Stat. 4 (1959), reprinted in 1 HRS 135 (2009), made Hawai'i a state of the Union. As a condition of admission, "the State of Hawai'i agreed to hold certain lands granted to the State by the United States in a public land trust," subject to the trust provisions set forth in § 5(f) of the Admission Act. Corboy v. Louie, 128 Hawai'i 89, 92, 283 P.3d 695, 698 (2011) (citing Office of Hawaiian Affairs v. State, 96 Hawai'i 388, 390,

---

[4] In light of this holding, we do not reach the issue of whether res judicata or collateral estoppel bar Plaintiffs' claims.

31 P.3d 901, 903 (2001); Admission Act § 5). Section 5(f) requires the State to hold those lands and the profits from them for one of five enumerated purposes: (1) "the support of the public schools and other public educational institutions"; (2) "the betterment of the conditions of native Hawaiians, as defined in the [HHCA], as amended"; (3) "the development of farm and home ownership on as widespread a basis as possible"; (4) "the making of public improvements"; and (5) "the provision of lands for public use."[5]

Before 1978, the State directed the proceeds and income of the trust lands "by and large to the Department of Education[,]" making public education the primary beneficiary of the trust. Office of Hawaiian Affairs v. Yamasaki, 69 Haw. 154, 161-62, 737 P.2d 446, 450-51 (1987) (quoting Office of the

---

[5] Section 5(f) provides:

The lands granted to the State of Hawai'i by subsection (b) of this section and public lands retained by the United States under subsections (c) and (d) and later conveyed to the State under subsection (e), together with the proceeds from the sale or other disposition of any such lands and the income therefrom, shall be held by said State as a public trust for the support of the public schools and other public educational institutions, for the betterment of the conditions of native Hawaiians, as defined in the [HHCA], as amended, for the development of farm and home ownership on as widespread a basis as possible for the making of public improvements, and for the provision of lands for public use. Such lands, proceeds, and income shall be managed and disposed of for one or more of the foregoing purposes in such manner as the constitution and laws of said State may provide, and their use for any other object shall constitute a breach of trust for which suit may be brought by the United States.

Legislative Auditor, Final Report on the Public Land Trust 14 (1986)).  However, the 1978 Constitutional Convention proposed – and Hawaiʻi voters adopted – constitutional amendments that expressly and fundamentally changed the State's objectives with regard to the § 5(f) public land trust.[6]  Id.  Article XII, section 4 specified that the public land trust, except for

---

[6]     Sections 4, 5 and 6 of Article XII of the Hawaiʻi Constitution provide:

> **Section 4**.  The lands granted to the State of Hawaiʻi by Section 5(b) of the Admission Act and pursuant to Article XVI, Section 7, of the State Constitution, excluding therefrom lands defined as "available lands" by Section 203 of the [HHCA], as amended, shall be held by the State as a public trust for native Hawaiians and the general public.

> **Section 5**.  There is hereby established an Office of Hawaiian Affairs.  The Office of Hawaiian Affairs shall hold title to all the real and personal property now or hereafter set aside or conveyed to it which shall be held in trust for native Hawaiians and Hawaiians.  There shall be a board of trustees for the Office of Hawaiian Affairs elected by qualified voters who are Hawaiians, as provided by law.  The board members shall be Hawaiians.  There shall be not less than nine members of the board of trustees; provided that each of the following Islands have one representative:  Oahu, Kauai, Maui, Molokai and Hawaiʻi.  The board shall select a chairperson from its members.

> **Section 6**.  The board of trustees of the Office of Hawaiian Affairs shall exercise power as provided by law: to manage and administer the proceeds from the sale or other disposition of the lands, natural resources, minerals and income derived from whatever sources for native Hawaiians and Hawaiians, including all income and proceeds from that pro rata portion of the trust referred to in section 4 of this article for native Hawaiians; to formulate policy relating to affairs of native Hawaiians and Hawaiians; and to exercise control over real and personal property set aside by state, federal or private sources and transferred to the board for native Hawaiians and Hawaiians.  The board shall have the power to exercise control over the Office of Hawaiian Affairs through its executive officer, the administrator of the Office of Hawaiian Affairs, who shall be appointed by the board.

Hawaiian Home Lands, is to be held "as a public trust for native Hawaiians and the general public." Article XII, section 5 established the Office of Hawaiian Affairs (OHA), and directed that it "hold title to all the real and personal property now or hereafter set aside or conveyed to it which shall be held in trust for native Hawaiians and Hawaiians." Article XII, section 6 described the power of the OHA board of trustees and noted that the "income and proceeds from that pro rata portion of the [public land trust] for native Hawaiians" was included among the property that OHA was to hold and manage in trust "for native Hawaiians and Hawaiians." In describing its vision for OHA to be independent from all other branches of government, the Constitutional Convention's Committee on Hawaiian Affairs expressed a desire to stop the "commingling of funds intended for native Hawaiians of one-half blood with other moneys in the state treasury." Stand. Comm. Rep. No. 59, in 1 Proceedings of the Constitutional Convention of Hawai'i of 1978, at 645. The framers also believed it important that Hawaiians have "the right to determine the priorities which will effectuate the betterment of their condition and welfare by granting to the board of trustees powers to 'formulate policy relating to affairs of

native Hawaiians.'"[7]   Stand. Comm. Rep. No. 59, in 1978

Proceedings, at 645.

To execute these constitutional provisions, the 1979

legislature enacted Act 196, codified in HRS chapter 10.  See

1979 Haw. Sess. Laws Act 196, at 398-408; HRS ch. 10.  Act 196,

inter alia, created "an office of Hawaiian affairs constituted as

a body corporate which shall be a separate entity independent of

the executive branch," and set forth the powers and duties of the

OHA board.  1979 Haw. Sess. Laws Act 196, § 2, at 400.  HRS § 10-

3[8] sets forth OHA's purposes, including:

---

[7]     The foregoing quote by the Committee on Hawaiian Affairs used the term "native Hawaiians" rather than "Hawaiians."  Stand. Comm. Rep. No. 59, in 1978 Proceedings, at 645.  However, the committee chose to use the term "native Hawaiians" to refer to all Hawaiians.  See id. at 643 ("In the sections that follow, your Committee refers to all descendants, regardless of blood quantum, as being native Hawaiians.").

[8]     HRS § 10-3 (2009) provides, in relevant part:

The purposes of the office of Hawaiian affairs include:

(1) The betterment of conditions of native Hawaiians. A pro rata portion of all funds derived from the public land trust shall be funded in an amount to be determined by the legislature for this purpose, and shall be held and used solely as a public trust for the betterment of the conditions of native Hawaiians. For the purpose of this chapter, the public land trust shall be all proceeds and income from the sale, lease, or other disposition of lands ceded to the United States by the Republic of Hawai'i under the joint resolution of annexation, approved July 7, 1898 (30 Stat. 750), or acquired in exchange for lands so ceded, and conveyed to the State of Hawai'i by virtue of section 5(b) of the Act of March 18, 1959 (73 Stat. 4, the Admissions Act), (excluding therefrom lands and all proceeds and income from the sale, lease, or disposition of lands defined as "available lands" by section 203 of the [HHCA], as amended), and all

(continued...)

(1) The betterment of conditions of native Hawaiians.[9] A pro rata portion of all funds derived from the public land trust shall be funded in an amount to be determined by the legislature for this purpose, and shall be held and used <u>solely as a public trust for the betterment of the conditions of native Hawaiians</u>. . . .

(2) The betterment of conditions of Hawaiians;[10]

(3) Serving as the principal public agency in this State responsible for the performance, development, and coordination of programs and activities relating to native Hawaiians and Hawaiians[.]

HRS § 10-3 (emphasis added).

Among the powers and duties the legislature granted to the OHA board of trustees is the power to "[m]anage, invest, and administer the proceeds from the sale or other disposition of

---

[8](...continued)
proceeds and income from the sale, lease, or other disposition of lands retained by the United States under sections 5(c) and 5(d) of the Act of March 18, 1959, later conveyed to the State under section 5(e);

(2) The betterment of conditions of Hawaiians[.]

(Emphasis added).

[9] HRS § 10-2 (2009) defines "[n]ative Hawaiian" as:

any descendant of not less than one-half part of the races inhabiting the Hawaiian Islands previous to 1778, as defined by the [HHCA], as amended; provided that the term identically refers to the descendants of such blood quantum of such aboriginal peoples which exercised sovereignty and subsisted in the Hawaiian Islands in 1778 and which peoples thereafter continued to reside in Hawai'i.

[10] HRS § 10-2 defines "Hawaiian" as:

any descendant of the aboriginal peoples inhabiting the Hawaiian Islands which exercised sovereignty and subsisted in the Hawaiian Islands in 1778, and which peoples thereafter have continued to reside in Hawai'i.

lands, natural resources, minerals, and income derived from whatever sources for native Hawaiians and Hawaiians, including all income and proceeds from that pro rata portion of the trust referred to in section 10-3[.]"  HRS § 10-5(1) (2009).  In 1980, the legislature set the pro rata share at "[t]wenty per cent of all funds derived from the public land trust[.]"[11]  1980 Haw. Sess. Laws Act 273, § 1 at 525, codified at HRS § 10-13.5 (2009).

## B.   Federal court action

On March 10, 2006, Plaintiffs,[12] identifying themselves as native Hawaiians as defined in Section 201(a) of the HHCA, filed an amended complaint in the United States District Court for the District of Hawai‘i (U.S. District Court) against current and former OHA trustees, alleging that the OHA trustees misspent funds derived from the trust established by § 5(f) of the Admission Act by expending those funds without regard to blood quantum.  Specifically, Plaintiffs contended that the OHA trustees breached their "legal duty" to expend trust funds solely for the betterment of the conditions of native Hawaiians by

---

[11]     HRS § 10-13.5 (2009) provides that "[t]wenty per cent of all funds derived from the public land trust, described in section 10-3, shall be expended by [OHA] for the purposes of this chapter."

[12]     The plaintiffs in the federal court action included the Plaintiffs in the instant state action and Mel Hoomanawanui.  Day v. Apoliona (Day I), 451 F. Supp. 2d 1133, 1134 (D. Haw. 2006).

spending those trust funds to lobby for the Akaka Bill,[13] and to support the Native Hawaiian Legal Corporation (NHLC),[14] Na Pua No'eau Education Program (Na Pua No'eau),[15] and Alu Like.[16] Plaintiffs alleged that the OHA trustees' expenditures violated the Admission Act, enforceable in federal court by 42 U.S.C. § 1983, the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and Hawai'i common law and HRS § 10-16(c).[17] On August 10, 2006, the U.S. District Court dismissed the action, holding that the Plaintiffs may not enforce

---

[13] The proposed Native Hawaiian Government Reorganization Act of 2007, known as the Akaka Bill, "would create a process through which the United States could recognize a governing entity for Hawaii's indigenous people." Day II, 616 F.3d at 922 (citation omitted).

[14] NHLC received money from OHA to provide legal representation to Hawaiians with regard to, inter alia, the "[p]reservation and perpetuation of traditional and customary practices [and] [p]rotection of culturally significant places, including burial sites and material culture." Day II, 616 F.3d at 927-28 (brackets in original).

[15] Na Pua No'eau is an educational center that received funds from OHA to provide educational services to Hawaiian children in grades K through 12. Day II, 616 F.3d at 928; Day II, 2008 WL 2511198, at *12.

[16] Alu Like is a "nonprofit organization that strives to help Hawaiians and native Hawaiians achieve social and economic self-sufficiency through the provision of early childhood education and child care, elderly services, employment preparation and training, library and genealogy services, specialized services for at-risk youth, and information and referral services." Day II, 2008 WL 2511198, at *12.

[17] Although Plaintiffs alleged a violation of HRS § 10-16(c), it appears that the statute establishes a basis for suit rather than a requirement that can be violated. HRS § 10-16(c) (2009) provides:

> (c) In matters of misapplication of funds and resources in breach of fiduciary duty, board members shall be subject to suit brought by any beneficiary of the public trust entrusted upon the office, either through the office of the attorney general or through private counsel.

public trust duties in the Admission Act under § 1983.  Day I,
451 F. Supp. 2d at 1136.  The U.S. District Court also dismissed
the Plaintiffs' Equal Protection claim and declined to exercise
supplemental jurisdiction over the remaining state law claims.
Id.

Plaintiffs appealed to the Ninth Circuit Court of
Appeals, contesting only the dismissal of the § 1983 claim for
violation of the Admission Act.  Day v. Apoliona, 496 F.3d 1027,
1030 (9th Cir. 2007).  The Ninth Circuit reversed the U.S.
District Court's dismissal of the case and remanded, holding that
"each Native Hawaiian plaintiff, as a beneficiary of the trust
created by § 5(f), has an individual right to have the trust
terms complied with, and therefore can sue under § 1983 for
violation of that right."  Id. at 1039.  The Ninth Circuit left
"to the district court to interpret those § 5(f) purposes to
determine in the first instance not only whether [Plaintiffs']
allegations are true, but also whether the described expenditures
in fact violate § 5(f)."  Id.  The Ninth Circuit emphasized that
it was expressing no view concerning the merits of Plaintiffs'
expenditure challenges.  Id. at 1040 n.14.

On remand, the U.S. District Court granted the OHA
trustees summary judgment, concluding that OHA's expenditures of
the trust funds to support the Akaka Bill, NHLC, Na Pua No'eau,

and Alu Like are consistent with the Admission Act.  Day II, 2008 WL 2511198, at *1, *14.  Specifically, the U.S. District Court stated that the Plaintiffs conceded that the OHA trustees had broad discretion in determining whether a particular expenditure betters the conditions of native Hawaiians.  Id. at *7.  The court then viewed each of the challenged expenditures under trust principles.  Id. at *8-13.  The court first rejected the Plaintiffs' contention that the OHA trustees abused their discretion in supporting the Akaka Bill, and found that "[e]ven if the Akaka Bill is intended to benefit Hawaiians in general, the OHA trustees would not be unreasonable or arbitrary in viewing the Akaka Bill as also benefitting native Hawaiians." Id. at *7-8.  Specifically, the court noted that "[n]umerous" legal challenges had been brought against Hawaiian-only and native Hawaiian-only programs, alleging Equal Protection violations.  Id. at *8.  The court further noted that "[a]lthough most race-based preferences are subject to 'strict scrutiny,' preferences given to American Indian tribes are reviewed under the 'rational basis' standard."  Id. (citing Morton v. Mancari, 417 U.S. 535 (1974)).  Given the foregoing legal framework, "passage of the Akaka Bill might ultimately affect whether programs benefitting only Hawaiians and native Hawaiians are reviewed under the 'strict scrutiny' standard as involving racial

preferences, or under a 'rational basis' standard as involving a political preference." Id. Thus, the court reasoned, the trustees' expenditures in support of the Akaka Bill were proper:

> It cannot be said that the OHA trustees are abusing their discretion in supporting legislation that could affect challenges to programs favoring Hawaiians and native Hawaiians. The OHA trustees are reasonably exercising their fiduciary judgment when they expend trust funds in support of the Akaka Bill. That action is consistent with the public trust requirement that trust funds be used for the betterment of the conditions of native Hawaiians, even if the funds simultaneously better the conditions of Hawaiians.

Id.

The court next examined OHA's contract with the NHLC, and noted that under the contract, NHLC was to

> render legal services and provide legal representation to clients in substantive areas which shall include but shall not be limited to:
> (a) Assertion and defense of quiet title actions;
> (b) Protection, defense and assertion of ahupua'a and kuleana tenant rights, including rights of access and rights to water;
> (c) Land title assistance, including review of title and genealogy;
> (d) Preservation and perpetuation of traditional and customary practices;
> (e) Protection of culturally significant places, including burial sites and material culture; and
> (f) Preservation of Native Hawaiian Land Trust entitlements.

Id. at *10-11.

The court found that OHA's contract with the NHLC "arguably betters the conditions of native Hawaiians because it helps to preserve and perpetuate their traditional and customary practices, protect culturally significant areas, and help them

-14-

assert their legal rights regarding land and water in court."
Id. at 11. The court also found that OHA's contract with the
NHLC "also can be said" to support other public trust purposes,
such as aiding farm and home ownership, making public
improvements, and providing for lands for public use. Id.

The court next determined that OHA's use of trust funds
to support Na Pua No'eau constituted a proper exercise of the OHA
trustees' fiduciary judgment. Id. at *12. The court noted that
according to its contract with OHA, the University of Hawai'i at
Hilo, through its Na Pua No'eau program, was to "provide for
educational enrichment programs" that were "designed to optimize
learning for Hawaiian students" and "develop a stronger interest
in learning, connect learning and education to one's Hawaiian
identity, and explore possible educational, career and academic
goals." Id. (quotation marks omitted). In light of these
purposes, the court found that OHA's support of Na Pua No'eau
"arguably betters the conditions of native Hawaiians in ensuring
that learning is connected to students' Hawaiian identity." Id.
The court also found that the support of Na Pua No'eau was
consistent with the § 5(f) trust purpose of supporting public
schools and other public educational institutions. Id.

Finally, the court held that the OHA trustees
"exercised their reasonable discretion and fiduciary judgment" in

-15-

supporting Alu Like. Id. at *13. The court described Alu Like as "a nonprofit organization that strives to help Hawaiians and native Hawaiians achieve social and economic self-sufficiency through the provision of early childhood education and child care, elderly services, employment preparation and training, library and genealogy services, specialized services for at-risk youth, and information and referral services." Id. at *12. The court concluded that "Alu Like's programs better the conditions of native Hawaiians and support public education," and that the OHA trustees "did not abuse their considerable discretion in determining that one of the ways they were going to better the conditions of native Hawaiians was by providing support to a service organization with the mission of helping Hawaiians and native Hawaiians achieve social and economic self-sufficiency." Id. at *13.

The U.S. District Court noted that it did not examine whether the OHA trustees' expenditures violated state law:

> [F]or purposes of the § 1983 claim asserted in Count I, this court examines only whether the OHA trustees violated a federal right or statute, in this case, the Admission Act. Whether the OHA trustees are violating state law by using public trust funds to support the Akaka Bill, the Native Hawaiian Legal Corporation, the Na Pua No'eau Education Program, and Alu Like is not before this court.

Id. at *5.

The Plaintiffs appealed the U.S. District Court's grant of summary judgment. Day II, 616 F.3d at 921. The Ninth Circuit

-16-

affirmed the district court's order.  Id.  First, the Ninth
Circuit rejected Plaintiffs' argument that federal law requires
the OHA trustees to spend OHA's twenty percent share of the
§ 5(f) trust only "for the betterment of the conditions of native
Hawaiians."  Id. at 921, 924.  The Ninth Circuit stated that the
OHA trustees have not breached their federal trust obligations so
long as the expenditures meet any of the five purposes enumerated
in § 5(f).  Id. at 925.  Second, the Ninth Circuit rejected
Plaintiffs' alternative argument that, "even if OHA trustees may
spend for any of the § 5(f) trust purposes, they breached the
trust under federal law because each of the challenged projects
was not restricted to one or more of the enumerated purposes."
Id.  Relying on the common law of trusts, the Ninth Circuit noted
that "a trustee's 'power is discretionary except to the extent
its exercise is directed by the terms of the trust or compelled
by the trustee's fiduciary duties.'"  Id. at 926 (quoting
Restatement (Third) of Trusts § 87 cmt. a).  The Ninth Circuit
found that because § 5(f) set forth broad purposes and "does not
direct specific expenditures," the OHA trustees "have discretion
(i.e., are to use fiduciary judgment) to determine whether a
particular use of trust funds serves one or more of the trust
purposes."  Id. (citation, quotation marks, and brackets
omitted).  The Ninth Circuit also articulated the following trust

principles:

> "When a trustee has discretion with respect to the exercise of a power, its exercise is subject to supervision by a court only to prevent abuse of discretion."  In the context of the narrow federal inquiry into whether an expenditure is a use for a trust purpose, an abuse of discretion occurs when a trustee "has acted unreasonably – that is, beyond the bounds of reasonable judgment."

Id. (quoting Restatement (Third) of Trusts § 87, § 87 cmt. c) (internal citation omitted).

Accordingly, the Ninth Circuit evaluated the challenged expenditures to determine whether they were "beyond the bounds of a trustee's reasonable judgment that the project in question would serve § 5(f) trust purposes."  Id. at 926-27.  In doing so, the Ninth Circuit determined that each of the challenged expenditures was proper and met the § 5(f) purpose of betterment of the conditions of native Hawaiians.  Specifically, the Ninth Circuit found that: (1) "[a]lthough it is possible that the processes the Akaka Bill envisions could dilute some benefits that native Hawaiians currently enjoy to the exclusion of other Hawaiians, a trustee could reasonably conclude that the bill's benefits to the conditions of native Hawaiians outweigh any drawback"; (2) it was within the trustees' broad discretion to determine that using trust funds for the NHLC will better the conditions of native Hawaiians; (3) a reasonable trustee could view supporting Na Pua No'eau as serving at least two of the enumerated § 5(f) purposes, including the betterment of the

-18-

conditions of native Hawaiians, as "[n]ative Hawaiians stand to benefit if Hawaiian identity in general is preserved and pride in Hawaiian identity fostered[]"; and (4) trustees could reasonably determine that the conditions of native Hawaiians would benefit from Alu Like's efforts to "help[] Hawaiians and native Hawaiians achieve social and economic self-sufficiency." Id. at 927-28 (brackets in original).

The Ninth Circuit emphasized that its ruling was based on federal, rather than state law. For example, the Ninth Circuit stated that "[a]lleged violations of state laws regarding the management and disposition of § 5(f) funds are not necessarily breaches, under federal law, of the § 5(f) trust itself." Id. at 924 (emphasis in original). The Ninth Circuit also noted that the Plaintiffs' claims may be actionable under state law:

> We hold that, although § 5(f) permits Hawai'i to impose further rules and restrictions on management of the § 5(f) trust, it does not require the state and its agents to abide by those rules and restrictions as a matter of federal law. Those alleged violations are actionable under state law, if at all.

Id. at 929 (emphasis in original).

## C.   State circuit court proceedings

On March 23, 2011, Plaintiffs filed a complaint in circuit court. Plaintiffs alleged that the OHA trustees owed them a duty to spend trust funds "in the sole interest of the

[native Hawaiian] beneficiaries, except for collateral benefits to nonbeneficiaries, so long as the primary benefits of any action is [sic] enjoyed by beneficiaries, and the collateral benefits do not detract from nor reduce the benefits enjoyed by the beneficiaries." Plaintiffs further alleged that the OHA trustees violated "clearly established law" and breached this duty by "expend[ing] trust funds without regard to the blood quantum contained in the definition of native Hawaiians" as set forth in the HHCA. Specifically, Plaintiffs alleged that the OHA trustees expended trust funds without regard to blood quantum on lobbying efforts in support of the Akaka Bill, and on the NHLC, Na Pua No'eau, and Alu Like. Plaintiffs asserted that they suffered injury as a result because the "unlawful expenditures of trust funds . . . have diminished the funds available to be expended for betterment of the conditions of the 'native Hawaiian' beneficiaries pursuant to H.R.S. § 10-3(1), Article XII, §§ 4, 5, and 6 [of the Hawai'i Constitution], and §§ 4 and 5(f) of the Hawai'i Admission Act[.]" Plaintiffs sought an accounting and restoration of the funds, injunctive relief, damages pursuant to state common law and HRS § 10-16(c), and attorney's fees and costs.

On August 26, 2011, the OHA trustees filed a Motion to Dismiss the complaint. In their memorandum in support of the

motion, the OHA trustees argued that to the extent Plaintiffs asserted a claim for breach of trust under § 5(f), it was barred by res judicata based upon the U.S. District Court's 2008 judgment in Day II and the analysis in the U.S. District Court's and Ninth Circuit's opinions in the case. The OHA trustees also argued that Plaintiffs' breach of trust claim pursuant to HRS § 10-3(1) and article XII, sections 4, 5, and 6 of the Hawai'i Constitution was barred by collateral estoppel. The OHA trustees further argued that even if res judicata and collateral estoppel did not bar Plaintiffs' claims, they failed on the merits for the reasons set forth in Day II. Finally, the OHA trustees contended that to the extent the Plaintiffs were seeking damages against the OHA trustees in their individual capacities, the claims fail because there is no state law counterpart to § 1983, and, even if there was, any claim based upon it would be defeated by the doctrine of qualified immunity.

In their memorandum in opposition, Plaintiffs argued that their state law claims were not precluded by the doctrines of res judicata or collateral estoppel. Plaintiffs stated that they were not asserting claims under federal law, and that the federal courts did not consider the state law claims. Plaintiffs also appeared to draw further distinctions between state and

-21-

federal law by arguing that unlike federal law, HRS Chapter 673[18] waives the State's immunity to suits for breach of the § 5(f) trust. Plaintiffs further argued that "[t]here are significant state law provisions that impose a greater fiduciary duty upon OHA trustees than federal law, specifically HRS § 673-1(b)(1),[19] as incorporated into HRS § 10-16(c)."

In their reply brief, the OHA trustees argued that Plaintiffs' breach of trust claim was barred by collateral estoppel because although the U.S. District Court in Day declined to exercise pendent jurisdiction over the state law claim, the district court, in considering the claims under federal law,

---

[18] HRS § 673-1 (1993) waives State immunity "for any breach of trust or fiduciary duty resulting from the acts or omissions of its agents, officers and employees in the management and disposition of trust funds and resources of" the Hawaiian home lands trust, and the native Hawaiian public trust.

[19] HRS § 673-1(b) provides that the waiver does not apply to the following:

> (1) The acts or omissions of the State's officers and employees, even though such acts or omissions may not realize maximum revenues to the Hawaiian home lands trust and native Hawaiian public trust, so long as each trust is administered in the sole interest of the beneficiaries; provided that nothing herein shall prevent the State from taking action which would provide a collateral benefit to nonbeneficiaries, but only so long as the primary benefits are enjoyed by beneficiaries, and the collateral benefits do not detract from nor reduce the benefits enjoyed by the beneficiaries;
>
> (2) Any claim for which a remedy is provided elsewhere in the laws of the State; and
>
> (3) Any claim arising out of the acts or omissions of the members of the board of trustees, officers and employees of the office of Hawaiian affairs, except as provided in section 10-16.

-22-

analyzed each challenged expenditure and held the OHA trustees could reasonably have exercised their considerable judgment and discretion to determine that each expenditure betters the conditions of native Hawaiians.  The OHA trustees also argued that Plaintiffs' reliance on HRS § 673-1(b)(1) was misplaced because the statute is a waiver of sovereign immunity that, by its express terms, is not applicable to claims against OHA trustees.

The circuit court dismissed the complaint, finding that, even assuming that all allegations in the complaint were true, the complaint failed to state a claim upon which relief could be granted pursuant to HRCP Rule 12(b)(6):

> [P]laintiffs have brought this suit under [HRS § 10-16(c)] which provides that in matter of misapplication for funds and resources in breach of fiduciary duty the OHA board members shall be subject to suit.  However, in their complaint the only support plaintiffs provide for their claims are their allegations that OHA's use of funds for the Akaka Bill, NHLC, Na Pua No'eau, and Alu Like are expended for the benefit of Hawaiians without regard to the blood quantum.
>
> Those allegations fail to establish a claim of breach of fiduciary duty under [HRS § 10-16(c)] where plaintiffs' allegations that the funds are being expended without regard to blood quantum does not represent a per se violation of defendants' fiduciary duty.  Nowhere does it allege that defendants are using public trust funds specifically to better those of non-Native Hawaiian ancestry.  Furthermore nothing in the allegations state that defendants are required to use the funds exclusively for the betterment of only Native Hawaiians.
>
> Plaintiffs allege that defendants are required to expend funds in a way which primarily benefits beneficiaries which are Native Hawaiians and that non-beneficiaries are only entitled to collateral

-23-

benefits. The court dismisses this argument as this standard arises from language found in [HRS § 673-1(b)(1)], a specific statute under the Native Hawaiian Trust Judicial Relief Act which claim has not been brought or pled in the complaint itself. Additionally even if applicable, HRS 673-3 requires that plaintiffs first exhaust their administrative remedies before bringing suit in Circuit Court, a step that undisputedly has not been shown in the complaint thus the court would lack subject matter jurisdiction.

Even if plaintiffs were to have standing under 673-1, the language found in [HRS § 673-1(b)(1)] is inapplicable here. That section refers to a waiver of immunity by state officers and employees in Hawaiian Home Land trusts and Native Hawaiian public trusts. However, there is a subsequent provision, [HRS 673-1(b)(3)], which specifically addresses the issue of waiver of immunity for OHA members which is or [sic] arguably the case here.

Under [HRS § 673-1(b)(3)] there is no such language relating to primary benefits going to beneficiaries. Finally even if it were applicable, 673-1 is merely a waiver of immunity and that statute addressing immunity. Permitting suits to be brought against state officials such as OHA board members however. However, in this case this waiver of immunity is already somewhat conceded under [HRS §] 10-16 which unequivocally permits suits in the case of a breach of fiduciary duty.

And, as previously discussed, no claim has been factually asserted sufficient enough to bring a claim here. Thus under 673-1 is at most a standing statute and does not provide a standard by which plaintiff can legally use against defendant to establish liability. In other words, the statute itself does not create a private cause of action.

In conclusion, the court has reviewed plaintiffs' complaint and found no allegations that would support their claim for breach of fiduciary duty as brought in their claim under [HRS § 10-16(c)]. Therefore the defendants' motion is granted.

On October 12, 2011, the court entered its order granting the motion to dismiss. On November 8, 2011, Plaintiffs and Hoomanawanui filed a motion for leave to file an amended complaint pursuant to HRCP Rule 15(a) "to correct the

deficiencies identified by the court[.]"  The proposed amendments included, inter alia, adding Hoomanawanui as a plaintiff, and stating that the alleged misapplication of funds was "in violation of HRS §§ 10-16(c) and 708-874."[20]  Plaintiffs also changed the following allegation in their original complaint:

> 11.  In violation of clearly established law, Defendants have expended trust funds without regard to the blood quantum contained in the definition of native Hawaiians in the [HHCA] and HRS § 10-2, in particular as follows:  [The complaint then discussed expenditures for the Akaka Bill, NHLC, Na Pua No'eau, and Alu Like.]

The amended complaint replaced that language with the following:

> 10.  In violation of H.R.S. §§ 10-16(c) and 708-874 and said fiduciary [sic], Defendants have misapplied

---

[20]    HRS § 708-874 (1993) establishes and defines the offense of misapplication of entrusted property:

> (1) A person commits the offense of misapplication of entrusted property if, with knowledge that he is misapplying property and that the misapplication involves substantial risk of loss or detriment to the owner of the property or to a person for whose benefit the property was entrusted, he misapplies or disposes of property that has been entrusted to him as a fiduciary or that is property of the government or a financial institution.
>
> (2) "Fiduciary" includes a trustee, guardian, personal representative, receiver, or any other person acting in a fiduciary capacity, or any person carrying on fiduciary functions on behalf of a corporation or other organization which is a fiduciary.
>
> (3) To "misapply property" means to deal with the property contrary to law or governmental regulation relating to the custody or disposition of that property; "governmental regulation" includes administrative and judicial rules and orders as well as statutes and ordinances.
>
> (4) Misapplication of property is a misdemeanor.

said trust funds in the following manner:

11.  First, without restricting the use of said trust funds to the trust purpose of the betterment of the condition of native Hawaiians of not less than one-half part of the blood, Defendants have contributed a portion of said trust funds to organizations whose purpose is the betterment of the conditions of Hawaiians without regard to blood quantum or status as beneficiaries of the trust, specifically, but not limited to the following:

[] Defendants have expended trust funds for the support of the [NHLC, Na Pua No'eau, and Alu Like] which funds are permitted to be and have been expended for the benefit of non-beneficiary Hawaiians.

. . . .

12.  Second:  Defendants have misapplied trust funds by using a portion of said trust funds for the purpose of eliminating or diluting the beneficiary blood quantum established by the [HHCA] and H.R.S. § 10-2, specifically, but not limited to the following:
        a.  Defendants have expended trust funds lobbying for, and in support of, passage of federal and state legislation purporting to create a native Hawaiian governing entity to be established by persons of aboriginal Hawaiian ancestry without regard to the blood quantum requirements[.]

The OHA trustees opposed the motion, arguing that the amended complaint was virtually identical to the original complaint.  The circuit court held a hearing on November 28, 2011 and agreed with the OHA trustees that the proposed amendments "would be futile, that essentially, the amendments do not establish or state a claim, and secondly, the Court believes procedurally the amendment is to a matter that's already been dismissed, otherwise, we have eternal filings of motions to amend at this point on a matter that's already been dismissed."  On December 2, 2011, the circuit court entered a written order denying Plaintiffs' motion to file the amended complaint.  On

December 6, 2011, the circuit court entered a final judgment against Plaintiffs and in favor of all the OHA trustee defendants.

## D.  Appeal

Plaintiffs[21] timely filed a notice of appeal on December 29, 2011.  On September 24, 2012, we granted Plaintiffs' application for a mandatory and discretionary transfer of their appeal from the ICA to this court.

As stated supra, Plaintiffs raise two points of error in their appeal:

> (1) Whether the Court below erred in dismissing the complaint for failure to state a claim?
>
> (2) Whether dismissal is appropriate on grounds of res judicata or collateral estoppel?

In response, the OHA trustees argue that the circuit court's dismissal was proper because: (1) HRS chapter 673 is inapplicable to the claims, (2) the Plaintiffs failed to assert facts demonstrating that the OHA trustees abused their discretion

---

[21]     The notice of appeal included Hoomanawanui as a "proposed additional plaintiff," and Hoomanawanui is listed in the opening brief as an appellant.  However, Hoomanawanui was not named as a plaintiff in the complaint.  Although Hoomanawanui was named as a plaintiff in the proposed first amended complaint, the circuit court denied Plaintiffs' request to file that amended complaint.  Accordingly, Hoomanawanui is not a proper party to the instant appeal insofar as he was never a party to the action below. See Keahole Defense Coal., Inc. v. Bd. of Land and Natural Res., 110 Hawai'i 419, 428, 134 P.3d 585, 594 (2006) ("Generally, the requirements of standing to appeal are: (1) the person must first have been a party to the action; (2) the person seeking modification of the order or judgment must have had standing to oppose it in the trial court; and (3) such person must be . . . one who is affected or prejudiced by the appealable order." (emphasis added) (citation, emphasis, and quotation marks omitted)).

-27-

by expending funds for the challenged programs, (3) the Plaintiffs have not explained how incidental benefits to non-native Hawaiians render the expenditures to be outside the OHA trustees' discretion, and (4) the Plaintiffs' claim for breach of trust under state law is barred by collateral estoppel.

## II.  Standards of Review

### A.  Motion to Dismiss

A circuit court's ruling on a motion to dismiss is reviewed de novo.  Sierra Club v. Dep't of Transp., 115 Hawaiʻi 299, 312, 167 P.3d 292, 305 (2007).  It is well-established that

> [a] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim that would entitle him or her to relief. [The appellate court] must therefore view a plaintiff's complaint in a light most favorable to him or her in order to determine whether the allegations contained therein could warrant relief under any alternative theory.  For this reason, in reviewing [a] circuit court's order dismissing [a] complaint . . . [the appellate court's] consideration is strictly limited to the allegations of the complaint, and [the appellate court] must deem those allegations to be true.

Baptiste, 115 Hawaiʻi at 24, 165 P.3d at 925 (some brackets in original and some added) (quoting In re Estate of Rogers, 103 Hawaiʻi 275, 280-81, 81 P.3d 1190, 1195-96 (2003)).  "However, in weighing the allegations of the complaint as against a motion to dismiss, the court is not required to accept conclusory allegations on the legal effect of the events alleged."  Pavsek v. Sandvold, 127 Hawaiʻi 390, 403, 279 P.3d 55, 68 (App. 2012)

-28-

(quoting Marsland v. Pang, 5 Haw. App. 463, 474, 701 P.2d 175, 186 (1985)).

## B. Motion for Leave to Amend the Complaint

"Orders denying motions for leave to amend a complaint are reviewed for an abuse of discretion." Jou v. Dai-Tokyo Royal State Ins. Co., 116 Hawai'i 159, 163, 172 P.3d 471, 475 (2007) (quoting Office of Hawaiian Affairs v. State, 110 Hawai'i 338, 351, 133 P.3d 767, 780 (2006)).

## III. Discussion

## A. Plaintiffs' complaint fails to state a claim

Plaintiffs and the OHA trustees agree that HRS § 10-3 requires that certain trust funds "be held and used solely . . . for the betterment of the conditions of native Hawaiians." However, they disagree regarding the extent to which this provision limits the OHA trustees' discretion over such funds. Specifically, the Plaintiffs argue that the trustees may not expend funds on programs that provide benefits to Hawaiians without regard to blood quantum. In contrast, the OHA trustees argue that they have broad discretion in determining which expenditures benefit native Hawaiians, even if those expenditures also benefit Hawaiians.

Because these arguments largely rely on the interpretation of the term "solely" in HRS § 10-3, a review of

the origins of that term is instructive.

The term "solely" does not appear in § 5(f)'s mandate that public trust lands be held in a trust for, inter alia, "the betterment of the conditions of native Hawaiians[.]" Rather, it appears only in HRS § 10-3. The legislative history of HRS § 10-3, however, does not shed much light on the legislature's intent with regard to that term. In the 1979 legislative session, all but the final draft of the legislation that established HRS chapter 10 – House Bill 890 – excluded the term "solely." Early drafts required that the pro rata portion of the public land trust be "held as a public trust for native Hawaiians[,]" see H.B. 890, H.D. 1, S.D. 1, 10th Leg., Reg. Sess. (1979), or "held and used as a public trust for the betterment of the conditions of native Hawaiians[,]" see H.B. 890, H.D. 1, S.D. 2, 10th Leg., Reg. Sess. (1979); H.B. 890, H.D. 1, S.D. 3, 10th Leg., Reg. Sess. (1979).

A 1979 Senate Judiciary Committee report that accompanied Senate Draft 2 of House Bill 890 touched on the issue of the pro rata portion being used for native Hawaiians or the larger group, Hawaiians:

> C. Differentiation of the Public Trusts –- for Native Hawaiians and for Hawaiians. There appears to be some concern among some who profess to qualify by blood quantum as "native Hawaiian" that the public funds to be availed "pro rata" from the "lands and income" under the Admission Act must be utilized only to benefit "native Hawaiians," and not the more extensive group of "Hawaiians."

Your Committee notes that the Admission Act does expressly state that one of the five public trust purposes is the "betterment of the conditions of native Hawaiians." In that regard, a pro rata apportionment of such funds allocated for that public trust purpose must, by definition, be used for the "betterment of the conditions of native Hawaiians." Conversely, such pro rata portion of the section 5(f) public trust is not available for use by the Office of Hawaiian Affairs for the "betterment of conditions" of the larger group, "Hawaiians."

Your Committee observes, however, that such restriction need not apply to any other appropriation that the legislature may make. Also, as with any other public or charitable trust, the courts in the exercise of cy pres may appropriately utilize trust res for a similar trust purpose should that day come when the trust purpose, "betterment of conditions," is achieved.

S. Stand. Comm. Rep. No. 784, in 1979 Senate Journal, at 1356 (some emphases added).

Thus, based on that committee report, the Senate Judiciary Committee intended for OHA's expenditure of the pro rata portion of the public land trust to fulfill a specific purpose among those set forth in § 5(f); that is, that the pro rata portion be used for the "betterment of the conditions of native Hawaiians" as opposed to all Hawaiians. However, the Senate Judiciary Committee did not add the term "solely" in Senate Draft 2; rather, Senate Draft 2 stated that the pro rata portion of the public land trust "shall be held and used as a public trust for the betterment of the conditions of native Hawaiians." See H.B. 890, H.D. 1, S.D. 2, 10th Leg., Reg. Sess. (1979). This language remained in Senate Draft 3. See H.B. 890,

H.D. 1, S.D. 3, 10th Leg., Reg. Sess. (1979).

The term "solely" appeared for the first time in the conference committee draft, which reflects the current § 10-3 language that the pro rata portion of the funds derived from the public land trust "shall be held and used solely as a public trust for the betterment of the conditions of native Hawaiians." See H.B. 890, H.D. 1, S.D. 3, C.D. 1, 10th Leg., Reg. Sess. (1979) (emphasis added). The conference committee report that accompanied that draft, however, did not make any reference to the addition of the word "solely." See Conf. Comm. Rep. No. 77, in 1979 Senate Journal, at 997-1001; Conf. Comm. Rep. No. 76, in 1979 House Journal, at 1131-35.

Moreover, the legislature's subsequent amendments to chapter 10 indicate that lawmakers did not consider the term "solely" to be significant. In 1990, the legislature – via Act 304 – amended HRS § 10-3 in part by deleting the provision: "A pro rata portion of all funds derived from the public land trust . . . shall be held and used solely as a public trust for the betterment of the conditions of native Hawaiians." 1990 Haw. Sess. Laws Act 304, § 4 at 949 (emphasis added). Act 304 also amended HRS § 10-13.5 to provide that "[t]wenty per cent of all revenue derived from the public land trust shall be expended by [OHA] for the betterment of the conditions of native Hawaiians."

1990 Haw. Sess. Laws Act 304, § 7 at 951. Thus, Act 304 removed the term "solely" from chapter 10, but committee reports do not mention or explain this particular change. See Conf. Comm. Rep. No. 91, in 1990 House Journal, at 800-01. In fact, the omission did not appear material to the legislation's purpose, which included "clarify[ing] the revenues derived from the public land trust which shall be considered to establish the amount of funding to [OHA] for the purpose of the betterment of the conditions of native Hawaiians[.]"[22] 1990 Haw. Sess. Laws Act 304, § 1 at 947-48.

In 1997, the legislature further amended chapter 10 to add a new section that appropriated "[i]nterim" funds for the pro rata portion of the public land trust "for expenditure by [OHA] for the betterment of the conditions of native Hawaiians" for the 1997-98 and 1998-99 fiscal years. 1997 Haw. Sess. Laws Act 329,

_____

[22] The legislature enacted Act 304 as a response to this court's decision in Yamasaki, 69 Haw. 154, 737 P.2d 446. 1990 Haw. Sess. Laws Act 304, § 1 at 947. Yamasaki involved a lawsuit by OHA against several state officials and a public corporation; OHA "felt the State was not allocating twenty per cent of all funds derived from the public land trust to OHA as required by HRS § 10-13.5." 69 Haw. at 157, 165, 737 P.2d at 448, 453. The circuit court denied the defendants' motion to dismiss, id. at 157, 737 P.2d at 448, and on interlocutory appeal, this court reversed, concluding that the claims involved non-justiciable political questions. Id. at 167-75, 737 P.2d at 454-58; see also Office of Hawaiian Affairs, 96 Hawai'i at 393 n.6, 31 P.3d at 906 n.6 (noting that, in Yamasaki, no ruling could be made because "the construction of the term 'funds' [as used in HRS § 10-13.5] . . . constituted a non-justiciable political question because the legislature had not provided judicially manageable standards").

§ 2 at 958 (emphasis added).[23]  In 2001, this court invalidated and "effectively repealed" Act 304 as conflicting with federal law regarding airport revenue.  Office of Hawaiian Affairs, 96 Hawai'i at 399, 401, 31 P.3d at 912, 914.  The invalidity of Act 304 thus reinstated the "immediately preceding version" of chapter 10.  Id. at 400, 31 P.3d at 913.  Thus, HRS § 10-3 has since reflected its original language, which requires that the pro rata portion of the public land trust be "used solely as a public trust for the betterment of the conditions of native Hawaiians."  HRS § 10-3 (2009) (emphasis added).[24]  In sum, the legislative history and treatment of chapter 10 indicate that lawmakers did not view the term "solely" to be significant in

---

[23]    The amendment, which the legislature apparently passed in anticipation of Act 304 being invalidated, discussed infra, provided:

> Notwithstanding the definition of revenue contained in this chapter and the provisions of section 10-13.5, and notwithstanding any claimed invalidity of Act 304, Session Laws of Hawai'i 1990, the income and proceeds from the pro rata portion of the public land trust under article XII, section 6 of the state constitution for expenditure by the office of Hawaiian affairs for the betterment of the conditions of native Hawaiians for each of fiscal year 1997-1998 and fiscal year 1998-1999 shall be $15,100,000.

1997 Haw. Sess. Laws Act 329, § 2 at 958 (emphasis added).  See Office of Hawaiian Affairs, 110 Hawai'i at 344, 133 P.3d at 773 (stating that the legislature added the aforementioned section to HRS chapter 10 via Act 329 "[b]ecause of the concerns about the effect of [a circuit court ruling that OHA was entitled to revenues from various sources] and [in recognition of] the potential invalidity of section 16 of Act 304").

[24]    The 1997 amendment that appropriated interim funds "for expenditure by the office of Hawaiian affairs for the betterment of the conditions of native Hawaiians," codified at HRS § 10-13.3, is still contained in the HRS.

describing OHA's expenditures of the pro rata portion of the public land trust.

In arguing that the trustees must expend trust funds exclusively for the benefit of native Hawaiians, Plaintiffs largely rely on common law trust principles. Under the common law of trusts, "[e]xcept as otherwise provided in the terms of the trust, a trustee has a duty to administer the trust <u>solely in the interest of the beneficiaries</u>, or solely in furtherance of its charitable purpose." Restatement (Third) of Trusts § 78 (2007) (emphasis added). Known as the "duty of loyalty," <u>id.</u>, this standard appears consistent with the language in HRS § 10-3(1) that the pro rata portion of the public trust fund be used "<u>solely</u> as a public trust <u>for the betterment of the conditions of native Hawaiians</u>." HRS § 10-3(1) (emphasis added).

Under the duty of loyalty, a "trustee has a duty to the beneficiaries not to be influenced by the interest of any third person or by motives other than the accomplishment of the purposes of the trust." Restatement (Third) of Trusts § 78 cmt. f. Thus, it is improper for the trustee to enter into transactions "either for the purpose of benefiting a third person (whether or not a party to the transaction) <u>rather than the trust estate</u> or for the purpose of advancing an objective <u>other than the purposes of the trust</u>." <u>Id.</u> (emphases added). The duty of

loyalty has also been summarized as follows:

> A trustee is under a duty to the beneficiary of the trust to administer the trust solely in the interest of the beneficiary. The trustee must exclude all self-interest, as well as the interest of a third party, in his administration of the trust solely for the benefit of the beneficiary. The trustee must not place himself in a position where his own interests or that of another enters into <u>conflict, or may possibly conflict, with the interest of the trust or its beneficiary</u>. Put another way, the trustee may not enter into a transaction or take or continue in a position in which his personal interest or the interest of a third party is or becomes <u>adverse to the interest of the beneficiary</u>.

George Gleason Bogert & George Taylor Bogert, <u>The Law of Trusts and Trustees</u> [hereinafter, Bogert] § 543, at 218 (2d ed. Revised 1993) (emphases added).

Generally, a trustee's "power is discretionary except to the extent its exercise is directed by the terms of the trust or compelled by the trustee's fiduciary duties." Restatement (Third) of Trusts § 87 cmt. a; <u>Day II</u>, 616 F.3d at 926. "Even in cases of what are often called 'mandatory' powers or provisions, for which trustee compliance is required . . . , the trustee often has some discretionary authority and responsibility in important matters of detail and implementation." Restatement (Third) of Trusts § 87 cmt. a. For example, a trust may require the sale of certain property. If the trust does not provide any further requirements as to how the property is to be sold, the trustee may "exercise fiduciary judgment with respect to the timing . . . , price, and other terms of the sale." <u>Id.</u>

"When a trustee has discretion with respect to the exercise of a power, its exercise is subject to supervision by a court only to prevent abuse of discretion." Restatement (Third) of Trusts § 87. Where discretionary power is given to the trustee, "the court will not interfere unless the trustee in exercising or failing to exercise the power acts dishonestly, or with an improper even though not a dishonest motive, or fails to use his judgment, or acts beyond the bounds of a reasonable judgment." Dowsett v. Hawaiian Trust Co., 47 Haw. 577, 581, 393 P.2d 89, 93 (1964) (quoting Restatement (Second) of Trusts § 187 cmt. e (1959)); Restatement (Third) of Trusts § 87 cmt. b ("A court will not interfere with a trustee's exercise of a discretionary power (or decision not to exercise the power) when that conduct is reasonable, not based on an improper interpretation of the terms of the trust, and not otherwise inconsistent with the trustee's fiduciary duties[.]").

Based on the foregoing, the following standards apply to the instant case. First, a breach of the OHA trustees' duty to administer the public land trust solely in the interest of the beneficiaries occurs when the trustees' decision conflicts with the purpose of bettering the conditions of native Hawaiians or is made for the purpose of benefiting a non-beneficiary rather than the trust. Restatement (Third) of Trusts § 78 cmt. f (stating

that a trustee may not enter into transactions "either for the purpose of benefiting a third person . . . rather than the trust estate or for the purpose of advancing an objective other than the purposes of the trust"); Bogert § 543 ("[T]he trustee may not enter into a transaction . . . in which his personal interest or the interest of a third party is or becomes adverse to the interest of the beneficiary.").[25]  Under this view, an expenditure that betters the conditions of native Hawaiians may also simultaneously benefit the conditions of others.

Second, because chapter 10 does not mandate how the OHA trustees should expend trust funds to better the conditions of native Hawaiians, the trustees have broad discretion in making that determination.  Restatement (Third) of Trusts § 87 cmt. a

---

[25]    This view is consistent with Ahuna v. Dep't of Hawaiian Home Lands, 64 Haw. 327, 340, 640 P.2d 1161, 1169 (1982), which Plaintiffs rely on in part for, inter alia, the proposition that "[o]ne specific trust duty is the obligation to administer the trust solely in the interest of the beneficiary."  In Ahuna, the Department of Hawaiian Home Lands (the department) awarded a Hawaiian Home Lands trust beneficiary about 6.5 acres of a 10-acre lot, withholding the remainder because the parcel would be affected by a proposed highway.  64 Haw. at 329, 332, 640 P.2d at 1163, 1165.  The circuit court directed the department to issue a lease for the full 10 acres, and the department appealed.  64 Haw. at 328-29, 640 P.2d at 1163.
    This court concluded that the department "must adhere to high fiduciary duties normally owed by a trustee to its beneficiaries[,]" 64 Haw. at 338, 640 P.2d at 1168, and that this obligation requires that the trust be administered "solely in the interest of the beneficiary[,]" and with "reasonable skill and care to make trust property productive[.]"  64 Haw. at 340, 640 P.2d at 1169.  This court held that the department "impermissibly weighed the interests of certain third parties" – including the State, the County of Hawaiʻi, and Hawaiʻi taxpayers in general – when it refused to lease the entire ten acres.  64 Haw. at 340, 342, 640 P.2d at 1169, 1171.  Thus, the department's action – withholding part of the 10-acre parcel – was in consideration of the interests of third parties and conflicted with the interest of the Hawaiian Home Lands beneficiary.

(stating that a trustee's "power is discretionary except to the extent its exercise is directed by the terms of the trust or compelled by the trustee's fiduciary duties"). Thus, the OHA trustees' expenditures are to be reviewed for abuse of discretion, which occurs when a trustee "has acted unreasonably - that is, beyond the bounds of a reasonable judgment." Id. § 87 cmt. c.

Plaintiffs' complaint did not allege that the OHA trustees violated any of these principles. The complaint asserted that the OHA trustees violated "clearly established law" by expending trust funds "without regard to the blood quantum" as defined in the HHCA and HRS § 10-2, as follows:

> a. Defendants expended trust funds lobbying for, and in support of, passage of proposed federal legislation known as the "Akaka Bill," in its various forms beginning in 1999 through and including 2010, purporting to create a Native Hawaiian Governing Entity to be established by persons of aboriginal Hawaiian ancestry without regard to the blood quantum requirements of the [HHCA] and H.R.S. [§] 10-2;
>
> b. Defendants have expended trust funds for the support of the Native Hawaiian Legal Corporation which funds are permitted to be expended for the benefit of Hawaiians without regard to the blood quantum.
>
> c. Defendants have expended trust funds for the support of Na Pua No'eau Education Program which funds are permitted to be expended for the benefit of Hawaiians without regard to the blood quantum.
>
> d. Defendants have expended trust funds for the support of Alu Like which funds are permitted to be expended for the benefit of Hawaiians without regard to the blood quantum.
>
> e. Defendants have expended trust funds for other uses and purposes in which the primary benefits were not enjoyed by beneficiaries, and the benefits to

> nonbeneficiaries detracted from and/or reduced the
> benefits available to be enjoyed by the
> beneficiaries[.]

On appeal, Plaintiffs argue that the circuit court erred in ruling that the complaint failed to state a breach of fiduciary duty claim and erroneously determined that "expenditure of funds without regard to blood quantum is not a per se violation of the trust[.]"  Plaintiffs argue that because the status as a beneficiary of the trust is defined with regard to blood quantum, expenditures "without regard to blood quantum are expenditures without regard to status as beneficiary, in violation of the duty to administer the trust in the sole interest of the native Hawaiian beneficiaries."

However, viewed against the foregoing trust principles, Plaintiffs' allegations fail to state a claim.  Plaintiffs merely alleged that the OHA trustees expended trust monies for programs that are "permitted" to use such funds "for the benefit of Hawaiians without regard to the blood quantum" and that such "unlawful expenditures . . . have diminished the funds available to be expended for betterment of the conditions of the 'native Hawaiian' beneficiaries[.]"  However, the complaint does not allege that the OHA trustees' spending decisions were made for any purpose other than benefiting native Hawaiians.  Neither does the complaint allege that the expenditures were in conflict with or adverse to the interests of native Hawaiians.  Also missing

from the complaint are any factual allegations that the expenditures were in furtherance of programs that do not benefit native Hawaiians.  Accordingly, Plaintiffs' complaint failed to state a breach of fiduciary duty claim under HRS § 10-16(c).[26]

While Plaintiffs rely heavily on common law principles that trustees must administer the trust "solely in the interest of the beneficiaries," Plaintiffs also urge this court to impose on OHA another standard, that is, to "administer said trust in the sole interest of the beneficiaries, except for collateral benefits to nonbeneficiaries, so long as the primary benefits of any action is [sic] enjoyed by beneficiaries, and the collateral benefits do not detract from nor reduce the benefits enjoyed by the beneficiaries."  As the circuit court noted, the above language is borrowed from HRS § 673-1, which governs the State's waiver of immunity for breaches of trust or fiduciary duty

---

[26] This is not to say that the OHA trustees' expenditures are shielded from legal challenges.  Indeed, while the OHA trustees are afforded broad discretion over trust funds, such discretion is nonetheless subject to review.  See Dowsett, 47 Haw. at 581, 393 P.2d at 93 (stating that where a trustee has discretionary power, "the court will not interfere unless the trustee in exercising or failing to exercise the power acts dishonestly, or with an improper even though not a dishonest motive, or fails to use his judgment, or acts beyond the bounds of a reasonable judgment").  However, even under the generous principles applied in construing a complaint subject to a motion to dismiss, see Baptiste, 115 Hawai'i at 24, 165 P.3d at 925, Plaintiffs' allegations in the instant case are broad and conclusory.  Accordingly, absent more specific factual allegations regarding the trustees' expenditures, Plaintiffs' complaint is insufficient to survive a motion to dismiss.  Cf. Pavsek, 127 Hawai'i at 403; Clinton v. Enter. Rent-A-Car Co., 977 A.2d 892, 895 (Del. 2009) ("We do not . . . simply accept conclusory allegations unsupported by specific facts, nor do we draw unreasonable inferences in the plaintiff's favor.").

regarding, inter alia, the native Hawaiian public trust.

This standard is inapplicable here. First, Plaintiffs' claims are not brought under HRS chapter 673. Second, even if Plaintiffs asserted allegations pursuant to chapter 673, Plaintiffs neither allege nor appear to have met the chapter's procedural requirements to exhaust all available administrative remedies and give at least sixty days written notice. See HRS § 673-3 ("Before an action may be filed in circuit court under this chapter, the party filing suit shall have exhausted all administrative remedies available, and shall have given not less than sixty days written notice prior to filing of the suit that unless appropriate remedial action is taken suit shall be filed."); Office of Hawaiian Affairs, 110 Hawai'i at 359, 133 P.3d at 788 ("A plain reading of the statute [HRS § 673-3] indicates that administrative remedies must be exhausted and written notification of not less than sixty days must be given." (emphasis in original)).

Third, HRS § 673-1 expressly provides that it is not applicable to OHA trustees. As referenced above, HRS § 673-1(a) provides that the State waives its immunity for claims against the State for breach of the native Hawaiian public trust under article XII, sections 4, 5, and 6 of the Hawai'i Constitution. The standard that Plaintiffs urge this court to adopt, however,

appears in subsection (b) of HRS § 673-1, which sets forth claims that are <u>not</u> covered under the State's waiver, including certain claims against OHA:

> This waiver shall <u>not apply</u> to the following:
>
> (1) The acts or omissions of the State's officers and employees, even though such acts or omissions may not realize maximum revenues to the Hawaiian home lands trust and native Hawaiian public trust, <u>so long as each trust is administered in the sole interest of the beneficiaries; provided that nothing herein shall prevent the State from taking action which would provide a collateral benefit to nonbeneficiaries, but only so long as the primary benefits are enjoyed by beneficiaries, and the collateral benefits do not detract from nor reduce the benefits enjoyed by the beneficiaries</u>;
>
> (2) Any claim for which a remedy is provided elsewhere in the laws of the State; and
>
> (3) <u>Any claim arising out of the acts or omissions of the members of the board of trustees, officers and employees of the office of Hawaiian affairs, except as provided in section 10-16.</u>[27]

HRS § 673-1(b) (emphases added).

Plaintiffs concede that HRS § 673-1 does not apply to OHA trustees, but suggest that the aforementioned standard as outlined in HRS § 673-1(b) should apply as "a matter of reason and common sense." However, Plaintiffs do not cite any authority requiring the OHA trustees to follow such a standard. Moreover, nothing in HRS chapter 10, the Hawai'i Constitution, or § 5(f) of the Admission Act requires the application of the HRS § 673-1

___

[27] HRS § 10-16(c) provides, in relevant part, that "[i]n matters of misapplication of funds and resources in breach of fiduciary duty, board members shall be subject to suit brought by any beneficiary of the public trust entrusted upon the office, either through the office of the attorney general or through private counsel."

-43-

test in this context.  Accordingly, the standard articulated in

HRS § 673-1 does not apply.

## B.   The circuit court did not abuse its discretion in denying the Plaintiffs' motion to amend

Plaintiffs next contend that to the extent that the

complaint was defective, the circuit court erred in denying their

motion to amend the complaint.  HRCP Rule 15(a) (2009), which

governs Plaintiffs' motion to amend their complaint, provides in

relevant part:

> A party may amend the party's pleading once as a
> matter of course at any time before a responsive
> pleading is served or, if the pleading is one to which
> no responsive pleading is permitted and the action has
> not been placed upon the trial calendar, the party may
> so amend it at any time within 20 days after it is
> served.  Otherwise a party may amend the party's
> pleading only by leave of court or by written consent
> of the adverse party; and leave shall be freely given
> when justice so requires.

(Emphasis added).

This court has explained that,

> in the absence of any apparent or declared reason —
> such as undue delay, bad faith or dilatory motive on
> the part of the movant, repeated failure to cure
> deficiencies by amendments previously allowed, undue
> prejudice to the opposing party by virtue of allowance
> of the amendment, futility of amendment, etc. — the
> leave sought should, as HRCP Rule 15(a) requires, be
> "freely given."

Kamaka v. Goodsill Anderson Quinn & Stifel, 117 Hawai'i 92, 112,

176 P.3d 91, 111 (2008) (citation and brackets omitted).

Insofar as HRCP Rule 15(a) is substantively similar to

Federal Rules of Civil Procedure (FRCP) 15(a), "this court has

looked to the general standard applied by federal courts in interpreting this rule." Office of Hawaiian Affairs, 110 Hawai'i at 365, 133 P.3d at 794 (citing Gonsalves v. Nissan Motor Corp. in Hawai'i, Ltd., 100 Hawai'i 149, 160, 58 P.3d 1196, 1207 (2002)). In doing so, this court has stated that:

> [W]here the proposed amendments to a complaint are, inter alia, futile, a court may deny a motion for leave to file the amended complaint. Federal courts have further explained that an amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss for failure to state a claim pursuant to FRCP Rule 12(b)(6).

Id. (citations, quotation marks, and brackets omitted).

Plaintiffs' proposed amended complaint replaced the reference in the original complaint to HRS § 673-1 and instead stated that the OHA trustees owed a fiduciary duty "to use said trust funds for the betterment of the conditions of native Hawaiians as defined in the [HHCA] and H.R.S. § 10-2[.]" The proposed amended complaint also changed the following allegation in their original complaint:

> 11. In violation of clearly established law, Defendants have expended trust funds without regard to the blood quantum contained in the definition of native Hawaiians in the [HHCA] and HRS § 10-2, in particular as follows: [The complaint then discussed expenditures for the Akaka Bill, NHLC, Na Pua No'eau, and Alu Like.]

The amended complaint replaced that language with the following:

> 10. In violation of H.R.S. §§ 10-16(c) and 708-874 and said fiduciary [sic], Defendants have misapplied said trust funds in the following manner:

-45-

11. First, without restricting the use of said trust funds to the trust purpose of the betterment of the condition of native Hawaiians of not less than one-half part of the blood, Defendants have contributed a portion of said trust funds to organizations whose purpose is the betterment of the conditions of Hawaiians without regard to blood quantum or status as beneficiaries of the trust, specifically but not limited to the following:

[] Defendants have expended trust funds for the support of the [NHLC, Na Pua No'eau, and Alu Like] which funds are permitted to be and have been expended for the benefit of non-beneficiary Hawaiians.

. . . .

12. Second: Defendants have misapplied trust funds by using a portion of said trust funds for the purpose of eliminating or diluting the beneficiary blood quantum established by the [HHCA] and H.R.S. § 10-2, specifically, but not limited to the following:
    a. Defendants have expended trust funds lobbying for, and in support of, passage of federal and state legislation purporting to create a native Hawaiian governing entity to be established by persons of aboriginal Hawaiian ancestry without regard to the blood quantum requirements of the [HHCA] and H.R.S. [§] 10-2 which entity or entities are intended to eventually assume control over trust funds and other assets[.]

The amended complaint also fails to state a claim for breach of fiduciary duty insofar as it did not include any allegations that the OHA trustees were using the pro rata portion of the public trust funds for the purpose of benefiting those of non-native Hawaiian ancestry rather than native Hawaiians, nor did it allege that native Hawaiians did not benefit from the challenged expenditures. Again, in light of the broad discretion afforded to the trustees, the conclusory allegations in the amended complaint, without more, are insufficient to state a claim.

-46-

Moreover, to the extent that the amended complaint alleges a claim under HRS § 708-874,[28] such an amendment is futile because the statute does not create a private cause of action for Plaintiffs to enforce.  HRS § 708-874, which establishes the criminal offense of "misapplication of entrusted property," does not expressly authorize a private party to sue. In Reliable Collection Agency v. Cole, 59 Haw. 503, 584 P.2d 107 (1978), this court adopted the United States Supreme Court's factors in Cort v. Ash, 422 U.S. 66 (1975), "[i]n determining whether a private remedy is implicit in a statute not expressly providing one[.]"  Reliable, 59 Haw. at 507, 584 P.2d at 109

---

[28]    HRS § 708-874 provides:

(1) A person commits the offense of misapplication of entrusted property if, with knowledge that he is misapplying property and that the misapplication involves substantial risk of loss or detriment to the owner of the property or to a person for whose benefit the property was entrusted, he misapplies or disposes of property that has been entrusted to him as a fiduciary or that is property of the government or a financial institution.

(2) "Fiduciary" includes a trustee, guardian, personal representative, receiver, or any other person acting in a fiduciary capacity, or any person carrying on fiduciary functions on behalf of a corporation or other organization which is a fiduciary.

(3) To "misapply property" means to deal with the property contrary to law or governmental regulation relating to the custody or disposition of that property; "governmental regulation" includes administrative and judicial rules and orders as well as statutes and ordinances.

(4) Misapplication of property is a misdemeanor.

(Emphases added).

(quoting Cort, 422 U.S. at 78). Specifically, this court discussed three factors in Cort:

> First, is the plaintiff one of the class for whose [e]special benefit the statute was enacted; that is, does the statute create a right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?

Id. (ellipses omitted) (quoting Cort, 422 U.S. at 78). In determining whether a statute provides a private right of action, this court applies the first three Cort factors, "understanding that legislative intent appears to be the determinative factor." Rees v. Carlisle, 113 Hawai'i 446, 458, 153 P.3d 1131, 1143 (2007) (citation omitted).

Applying the foregoing factors, it is clear that HRS § 708-874 does not create a private right of action. Notably, the legislative history does not reflect an intent to create a private, independent right of action. HRS § 708-874 was established as part of Hawaii's Penal Code, 1972 Haw. Sess. Laws Act 9, § 1 at 32, 106-07, and the legislature specifically provided criminal punishment for the offense of misapplication of entrusted property insofar as it explicitly stated that the offense is a misdemeanor. For those same reasons, implying a private remedy for Plaintiffs would be inconsistent with the underlying purposes of the legislative scheme. In sum, no

-48-

private right of action exists under HRS § 708-874, and therefore Plaintiffs cannot state a claim under the statute.

Accordingly, the circuit court did not abuse its discretion in denying Plaintiffs' motion for leave to amend their complaint.

### IV. Conclusion

We hold that the circuit court did not err in granting the OHA trustees' motion to dismiss.  Thus, we affirm the circuit court's December 6, 2011 final judgment.

Walter R. Schoettle
for petitioners

Robert G. Klein and
Lisa W. Cataldo
for respondents

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Simeon R. Acoba, Jr.

/s/ Sabrina S. McKenna

/s/ Glenn J. Kim

