**Electronically Filed**
**Supreme Court**
**SCWC-15-0000005**
**09-OCT-2018**
**07:59 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---oOo---

_____

BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS
SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING LP,
Respondent/Plaintiff-Appellee,
vs.
GRISEL REYES-TOLEDO, Petitioner/Defendant-Appellant,
and
WAI KALOI AT MAKAKILO COMMUNITY ASSOCIATION;
MAKAKILO COMMUNITY ASSOCIATION; and
PALEHUA COMMUNITY ASSOCIATION,
Respondents/Defendants-Appellees.

_____

SCWC-15-0000005

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-15-0000005; CIVIL NO. 12-1-0668)

OCTOBER 9, 2018

NAKAYAMA, ACTING C.J., MCKENNA, POLLACK, AND WILSON, JJ.,
AND CIRCUIT COURT JUDGE GARIBALDI,
IN PLACE OF RECKTENWALD, C.J., RECUSED

OPINION OF THE COURT BY McKENNA, J.

## I. Introduction

This case returns to us after it was remanded to the

Intermediate Court of Appeals ("ICA") by our February 28, 2017

opinion Bank of America, N.A. v. Reyes-Toledo, 139 Hawai'i 361,

390 P.3d 1248 (2017) ("Reyes-Toledo I"). In Reyes-Toledo I, we vacated a foreclosure decree based on issues of fact regarding whether Bank of America, N.A., a National Association, as successor by merger to BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing LP ("Bank of America") held the note at the time the foreclosure lawsuit was filed. See 139 Hawai'i at 373, 390 P.3d at 1260.

Relevant to this certiorari proceeding, Reyes-Toledo I remanded the case to the ICA for a determination of whether the Circuit Court of the First Circuit ("circuit court")[1] erred by dismissing Grisel Reyes-Toledo's ("Homeowner['s]") four-count counterclaim before granting summary judgment for foreclosure in favor of Bank of America. See 139 Hawai'i at 373, 390 P.3d at 1260. On remand, the ICA ruled the circuit court properly dismissed the wrongful foreclosure, declaratory relief, and quiet title counts in Homeowner's counterclaim, but that it erred in dismissing the unfair and deceptive trade practices count. See Bank of America, N.A., Successor v. Reyes-Toledo, No. CAAP-15-0000005 (App. July 21, 2017) (SDO).

In sum, the ICA concluded the three counts were appropriately dismissed pursuant to Hawai'i Rules of Civil Procedure ("HRCP") Rule 12(b)(6) because: (1) as Homeowner did

---

[1] The Honorable Bert I. Ayabe presided.

not provide any authority to support "the proposition that a wrongful foreclosure claim can be raised prior to foreclosure or the sale of the property in judicial foreclosure," no set of facts would entitle Homeowner to relief, Reyes-Toledo, SDO at 6; (2) the face of the Mortgage listed MERS as "mortgagee" and "nominee," and as such, Homeowner's arguments in support of her allegations that "MERS was nothing more than a strawman and a conduit for fraud being practiced upon the Defendant and others" lacked merit, Reyes-Toledo, SDO at 7; and (3) Homeowner's quiet title count does not allege that she paid, or was able to pay, the outstanding debt on the Property "so as to demonstrate the superiority of her claim," Reyes-Toledo, SDO at 9.  In so concluding, the ICA applied the "plausibility" pleading standard set forth in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), which it had previously adopted in Pavsek v. Sandvold, 127 Hawaiʻi 390, 279 P.3d 55 (App. 2012).  See Reyes-Toledo, SDO at 2-4; see also Ashcroft v. Iqbal, 556 U.S. 662, 677-80 (2009) (clarifying Twombly).

Homeowner timely filed an application for writ of certiorari ("Application"), asserting the ICA erred in upholding the dismissal of the other three counts as it applied the wrong

pleading standard.[2] According to Homeowner, these three counts should have survived dismissal because when a party moves to dismiss a complaint pursuant to Hawai'i Rules of Civil Procedure ("HRCP") Rule 12(b)(6), the party admits the well-pleaded allegations of fact.

This appeal raises two issues: (1) the standard a pleading[3] must meet to overcome a HRCP Rule 12(b)(6) motion to dismiss; and (2) whether a claim for wrongful foreclosure exists under Hawai'i law.

As to the first issue, this court has never adopted the Twombly/Iqbal "plausibility" pleading standard, and we now expressly reject it. We reaffirm that in Hawai'i state courts, the traditional "notice" pleading standard governs. This provides citizen access to the courts and to justice.

As to the second issue, we hold that a party may bring a claim for wrongful foreclosure before the foreclosure actually occurs.

We therefore vacate the ICA's judgment on appeal affirming the circuit court's dismissal of three counts of Homeowner's

---

[2] Bank of America did not apply for certiorari with respect to the ICA's reinstatement of the unfair and deceptive trade acts and practices count, so that issue is not before us.

[3] Pursuant to HRCP Rule 8(a), a "pleading" "sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim[.]"

counterclaim, and remand the case to the circuit court for further proceedings consistent with this opinion as well as our opinion in Reyes-Toledo I.

## II.  Background

Only the factual and procedural backgrounds relevant to the issues on certiorari are discussed below.[4]

### A.  Homeowner's Answer and Counterclaim

In response to Bank of America's complaint seeking foreclosure ("Complaint") of Homeowner's property ("Property"), Homeowner filed her Answer and Counterclaim on September 28, 2012, denying all of the allegations in the Complaint, except those pertaining to her personal background, her September 24, 2007 execution of a promissory note made payable to Countrywide Bank, FSB ("Note"), and the recordation of a mortgage on the Property that secured the Note ("Mortgage").  She also asserted the following defenses in her Answer: (1) failure to state a claim upon which relief can be granted, (2) assumption of risk and contributory negligence, (3) fraud, based on Homeowner's reasonable belief that Bank of America was not the real party-in-interest and owner of the Note and Mortgage through any claimed assignment by Mortgage Electronic Registration Systems, Inc. ("MERS"), and (4) illegality, insofar as Bank of America

---

[4]    See Reyes-Toledo I for further details not relevant to the issues on certiorari.

5

was not the owner and holder of the Note and Mortgage and therefore not entitled to foreclose on the Mortgage.  She also contended that there was no valid interim assignment of the Mortgage to Bank of America and no valid negotiation for value of the Note to Bank of America.  She further asserted MERS could not be a lawful beneficiary of the Mortgage if it lacked possession of the Note.

Homeowner also asserted the following defenses in the event the Note and Mortgage had been transferred into a trust and securitized: (1) the claimed assignment of the Note and Mortgage into the trust may have violated the ninety-day closing date; (2) the claimed Mortgage assignment to Bank of America in October 2011 would be void as a violation of the express terms of the trust; (3) the purported assignment by which Bank of America claimed ownership of the Note and Mortgage may violate the trust provisions for the closing-date rule; (4) the purported transfers or assignments of the Mortgage after the closing date of the trust would be void in violation of the express terms of the trust and 26 U.S.C. § 860 et seq.; (5) the purported transfers may violate New York trust law and would therefore be void; (6) the Note may never have been transferred into the trust; (7) MERS was not a lender, banker, or servicer and therefore any transfers by MERS were void; (8) the purported transfers into and out of the trust violated the Internal

6

Revenue Code, 26 U.S.C. § 860; (9) the claimed assignments into and out of the trust may have violated the Pooling and Service Agreement ("PSA"), together with the Underwriting Agreement for the trust; (10) if there were transfers into a trust under the PSA, the transfers were not performed according to the terms of the trust and were therefore void; (11) the Note and Mortgage may never have been deposited or transferred into the trust; and (12) if the transfers were made into and out of a securitized trust, the signatures may have been by unauthorized persons and therefore void as forgeries, which would render the purported transfers fraudulent and void.

Homeowner asserted four counts in the counterclaim filed along with her Answer: (1) wrongful foreclosure; (2) declaratory relief; (3) quiet title; and (4) unfair and deceptive trade acts and practices (sometimes "UDAP") under HRS § 480-1 et seq.

In the first count of her counterclaim, alleging wrongful foreclosure, Homeowner incorporated by reference the defenses in her Answer, and alleged that Bank of America's conduct in commencing the foreclosure action was willful, malicious, and without just cause.

In the second count of her counterclaim, seeking declaratory relief, Homeowner incorporated by reference the allegations in the wrongful foreclosure count. She asserted she was entitled to declaratory relief pursuant to HRS § 632-1 that

(1) Bank of America was not the owner of the Mortgage and Note; (2) Bank of America was not entitled to foreclose on the Mortgage and Note; and (3) MERS was not the mortgagee on the Mortgage but rather was a "sham and fraud" that "acted only as a strawman." She also requested that the court determine the identity of the mortgagee and award her costs and attorney's fees pursuant to HRS § 607-14.

In the third count of her counterclaim, requesting the quieting of her title, Homeowner again incorporated by reference the allegations in the wrongful foreclosure count. She asserted she was entitled to have her legal title to the Property quieted against Bank of America's claims pursuant to HRS § 669-1 et seq., and that she was entitled to recover her costs and attorney's fees pursuant to HRS § 607-14.

Finally, in the fourth count of her counterclaim, alleging unfair and deceptive trade acts and practices, Homeowner again incorporated by reference the allegations in the wrongful foreclosure count. She alleged she was a consumer with respect to the Mortgage and Note, and she asserted the acts and conduct of Bank of America, its agents and predecessors, and MERS constituted an unfair and deceptive trade practice by "either or both mortgage lenders, mortgage servicers, mortgage holders, claimants, debt collectors, and/or finance companies." Homeowner claimed she paid about $55,593 to Bank of America

8

based on erroneous information and billings, and on the assumption that Bank of America was the rightful owner of the Mortgage. She maintained Bank of America and MERS were therefore subject to liability under HRS §§ 480-2 and 480-13 for injuries and damages of not less than $1,000, or for treble damages, plus attorney's fees and costs. Additionally, Homeowner asserted she was entitled to injunctive relief to enjoin the unlawful practices of Bank of America, its agents and predecessors, and MERS.

**B.    Motion to Dismiss Counterclaim**

On October 22, 2012, Bank of America filed a Motion to Dismiss Defendant Grisel Reyes-Toledo's Counterclaim ("Motion to Dismiss Counterclaim"). As to the wrongful foreclosure count, Bank of America asserted Homeowner did not describe any foreclosure that had actually occurred or what was wrongful about the alleged foreclosure, and that therefore the count should be dismissed. As to the declaratory judgment count, Bank of America alleged the involvement of MERS in loan transactions has been repeatedly approved by this court and that there was no allegation that MERS exceeded its traditionally approved role in Homeowner's case.

As to the quiet title count, Bank of America alleged that Homeowner failed to state a claim because she did not assert she had fully paid off the underlying obligation or is able to

9

tender the full amount before seeking relief.  Finally, Bank of America asserted that although the unfair and deceptive trade acts and practices count incorporated by reference the allegations in the wrongful foreclosure count, Homeowner did not describe the alleged unfair or deceptive acts or practices in any detail.

In her Memorandum in Opposition to Bank of America's Motion to Dismiss Counterclaim, Homeowner argued that all counts of her counterclaim, including the wrongful foreclosure count, were sufficient to survive a HRCP Rule 12(b)(6) motion to dismiss. She argued if she were to prove the facts alleged in her counterclaim, which incorporated the allegations in her Answer, she would be entitled to relief against Bank of America. Homeowner also asserted that Bain v. Metro Mortgage Group, Inc., 285 P.3d 34 (Wash. 2012) supports her claim that MERS is merely a registration system and not a holder of the Note. Additionally, Homeowner maintained sufficient facts were pled for both the declaratory judgment and quiet title counts pursuant to Amina v. Bank of New York Mellon, Civil No. 11-00714 JMS/BMK, 2012 WL 3283513 (D. Haw. 2012), in which the court held that a borrower need not tender payment or allege that a note

and mortgage were satisfied to quiet title against a party who is not a mortgagee.[5]

In its Reply Memorandum, Bank of America asserted that if Homeowner believed Bank of America lacked authority to foreclose, then her arguments were defenses, not affirmative claims for relief. Bank of America also asserted that a claim for wrongful foreclosure cannot arise before a foreclosure occurs. Bank of America alleged that to the extent Homeowner's other counts relied upon allegations set forth in the wrongful foreclosure count, they should also be dismissed.

On February 12, 2013, the circuit court entered an order granting Bank of America's Motion to Dismiss Counterclaim ("Order Dismissing Counterclaim"). Homeowner filed a motion for reconsideration contending she had sufficiently pled her "compulsory" counterclaim as Bank of America was not the mortgagee, had no right to bring a foreclosure action, and was liable to her for over $160,000 based on her UDAP counterclaim. In the alternative, she moved for entry of final judgment and a HRCP Rule 54(b) certification allowing immediate appeal of the order Dismissing Counterclaim. She also requested a stay pending appeal pursuant to HRCP Rule 62(d) and (h).

After Bank of America filed its opposition,

---

[5] The UDAP count was reinstated by the ICA and is not before us on certiorari.

11

on December 31, 2013, the circuit court denied Homeowner's Motion for Reconsideration and Rule 54(b) Certification ("Order Denying Defendant Grisel Reyes-Toledo's Motion for (1) Reconsideration of the February 12, 2013 Order Dismissing Counterclaim; (2) HRCP Rule 54(b) Certification; and (3) HRCP Rule 62(d) and (h) Stay Pending Appeal Filed on February 22, 2013") ("Order Denying Motion for Reconsideration").[6]

## C.   ICA's Decision on Remand

Addressing the propriety of the dismissal of Homeowner's counterclaim for the first time on remand from Reyes-Toledo I, the ICA affirmed in part and vacated in part the circuit court's Order Dismissing Counterclaim, entering its summary disposition order ("SDO") on July 21, 2017.  See Reyes-Toledo, SDO at 12. The ICA applied the following standard to evaluate Bank of America's HRCP Rule 12(b)(6) motion to dismiss:

---

[6]   The circuit court subsequently granted Bank of America's motion for summary judgment through its December 9, 2014 "Findings of Fact, Conclusions of Law, Order Granting Plaintiff's Motion for Summary Judgment Against All Parties and Interlocutory Decree of Foreclosure Filed April 4, 2014" ("Foreclosure Decree"), and entered a separate foreclosure judgment.  In the first appeal, Homeowner appealed this judgment.  In a summary disposition order, the ICA affirmed.  As noted, on certiorari in Reyes-Toledo I, we held: (1) genuine issues of material fact existed as to whether Bank of America was entitled to enforce the Note at the time it commenced the foreclosure proceedings, precluding summary judgment as to Bank of America's standing to institute the proceedings; (2) the assignment of the Mortgage was insufficient to establish Bank of America's standing to institute foreclosure proceedings; and (3) the foreclosure judgment was a final appealable judgment, and thus the ICA had appellate jurisdiction over the Order Dismissing Counterclaim.  We vacated the ICA's April 13, 2016 Judgment on Appeal and the Foreclosure Decree to the extent it granted summary judgment in favor of Bank of America.  We also remanded the case to the ICA to determine whether the circuit court erred in dismissing Homeowner's counterclaim.

> A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim that would entitle him or her to relief.  We must therefore view a plaintiff's complaint in a light most favorable to him or her in order to determine whether the allegations contained therein could warrant relief under any alternative theory. For this reason, in reviewing a circuit court's order dismissing a complaint our consideration is strictly limited to the allegations of the complaint, and we must deem those allegations to be true.

Reyes-Toledo, SDO at 3 (quoting In Re Estate of Rogers, 103 Hawai'i 275, 280–81, 81 P.3d 1190, 1195–96 (2003)).  The ICA went on, however, to quote an excerpt from Twombly, 550 U.S. at 555, which the ICA previously quoted in Pavsek, 127 Hawai'i 390, 279 P.3d 55 (App. 2012):

> While a complaint attacked by [a HRCP] Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact).

Reyes-Toledo, SDO at 4 (quoting Pavsek, 127 Hawai'i at 403, 279 P.3d at 68).

Based on these standards, the ICA concluded the circuit court did not err in dismissing three of the four counts of Homeowner's counterclaim.

First, with respect to the wrongful foreclosure count, the ICA noted that although Homeowner alleged Bank of America's conduct in commencing the foreclosure was "willful, malicious, and without just cause," she failed to identify any other

13

specific acts that would make the foreclosure wrongful.  Reyes-
Toledo, SDO at 4.  Further, the ICA opined that Homeowner failed
to provide any authority to support her proposition that a
wrongful foreclosure claim can be asserted before the
foreclosure or sale of the property in a judicial foreclosure.
See Reyes-Toledo, SDO at 6.  According to the ICA's analysis,
only non-judicial wrongful foreclosure has been recognized in
Hawai'i, and other jurisdictions have held a wrongful foreclosure
claim does not arise until after the foreclosure occurs.  See
Reyes-Toledo, SDO at 4-5 (citing Santiago v. Tanaka, 137 Hawai'i
137, 366 P.3d 612 (2016); Cervantes v. Countrywide Home Loans,
Inc., 656 F.3d 1034 (9th Cir. 2011)).  As this case involved a
pending judicial foreclosure and Homeowner asserted her wrongful
foreclosure claim before any foreclosure or sale occurred, the
ICA concluded Homeowner could not prove a set of facts that
would entitle her to relief on the wrongful foreclosure count.
See Reyes-Toledo, SDO at 6.

Second, the ICA also concluded the circuit court did not
err in dismissing the declaratory judgment count.  See Reyes-
Toledo, SDO at 7-8.  The ICA disagreed with Homeowner's argument
that pursuant to Bain, 285 P.3d 34, she was entitled to
declaratory relief under HRS § 632-1, ruling that Bain was
distinguishable as explained in its prior decision in Bank of
America, N.A. v. Hermano, No. CAAP 13-0006069, at 6-7 (App. June

14

22, 2016) (SDO), <u>cert. denied</u>, No. SCWC-13-0006069 (Sept. 22, 2016):

> <u>Bain</u> was decided in the context of a non-judicial deed-of-trust foreclosure, whereas the instant case is a judicial foreclosure of a mortgage.  Thus, the procedures and law in <u>Bain</u> appear to be inapplicable here.  The <u>Bain</u> decision was limited to whether MERS is a "beneficiary" under the language of Washington's Deed of Trust Act, thus the analysis is different.  In addition, <u>Bain</u> is a Washington State case; upon review, we are not inclined to depart from the Hawai'i cases that have consistently recognized the validity of assignments of mortgages by MERS where lenders granted to MERS, as nominee for lenders and lenders' successors and assigns, the right to exercise all of those interests granted by a borrower, including the right to foreclose and sell a property and to take any action required of a lender.

<u>Reyes-Toledo</u>, SDO at 7 (quoting <u>Hermano</u>, SDO at 6–7) (citations omitted).  Here, MERS was listed in the Mortgage as "mortgagee" and "nominee," and the Mortgage's terms granted MERS the right to "exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument."  <u>Id.</u> Thus, the ICA concluded Homeowner's argument was without merit and the circuit court did not err in dismissing this count.  <u>See</u> <u>Reyes-Toledo</u>, SDO at 7–8.

Third, the ICA concluded the circuit court did not err in dismissing Homeowner's quiet title count.  <u>See</u> <u>Reyes-Toledo</u>, SDO at 9.  The ICA reasoned that as with the counterclaimant in <u>Hermano</u>, Homeowner's reliance on <u>Amina</u>, Civil No. 11-00714 JMS/BMK, 2012 WL 3283513, to support her argument that a

15

"borrower does not need to tender payment to allege that the promissory note and the mortgage were paid where the borrower brings a quiet title action against a party, who, according to the complaint, is not a mortgagee," was misplaced.  Id.  To the ICA, Amina provided a significant clarification:

> To be clear . . . this is not a case where Plaintiffs assert that Defendant's mortgagee status is invalid (for example, because the mortgage loan was securitized or because Defendant does not hold the note).  On their own, such allegations would be insufficient to assert a quiet title claim-they admit that a defendant is a mortgagee and attack the weakness of the mortgagee's claim to the property without establishing the strength and superiority of the borrower's claim (by asserting an ability to tender).

Id. (quoting Amina, 2012 WL 3283513, at \*5).

The ICA concluded each of Homeowner's arguments — that Bank of America's mortgagee status was invalid, the mortgage loan was securitized, and Bank of America did not possess the Note — were "specifically distinguished" in Amina.  See id.  The ICA concluded the quiet title count therefore failed because Homeowner did not "demonstrate the superiority of her claim" as she did not allege she paid, or was able to pay, the outstanding debt on the Property.  Id.

As to Homeowner's UDAP claim raised in the fourth and final count of her counterclaim, however, the ICA concluded that because of this court's decisions in Santiago, 137 Hawai'i 137, 366 P.3d 612, Hungate v. Law Office of David B. Rosen, 139 Hawai'i 394, 391 P.3d 1 (2017), and Reyes-Toledo I, the circuit

16

court erred in dismissing the UDAP counterclaim. See Reyes-Toledo, SDO at 10-11.

Finally, the ICA also concluded Homeowner was not entitled to any further relief based on her request for reconsideration of the circuit court's dismissal of her counterclaim. See Reyes-Toledo, SDO at 11-12. The ICA reasoned she failed to present any new evidence or arguments in conjunction with her motion for reconsideration that could not have been presented during the earlier adjudicated motion to dismiss. See id.

The ICA thus affirmed in part and vacated in part the circuit court's Order Dismissing Counterclaim, and remanded to the circuit court for further proceedings. See Reyes-Toledo, SDO at 12. The ICA entered its Judgment on Appeal on October 5, 2017.

## D. Application for Writ of Certiorari

Homeowner timely applied for a writ of certiorari ("Application") from the October 5, 2017 Judgment entered by the ICA pursuant to its July 21, 2017 SDO, essentially arguing the three remaining counts of her counterclaim should not have been dismissed pursuant to HRCP Rule 12(b)(6). Bank of America filed a response on November 2, 2017.

## III. Standard of Review

A circuit court's ruling on a motion to dismiss is reviewed de novo. See Hungate, 139 Hawai'i at 401, 391 P.3d at 8 (quoting

17

Kamaka v. Goodsill Anderson Quinn & Stifel, 117 Hawai'i 92, 104, 176 P.3d 91, 103 (2008), as amended (Jan. 25, 2008 & Feb. 14, 2008)).  Moreover, "[w]hen interpreting rules promulgated by the court, principles of statutory construction apply. Interpretation of a statute is a question of law which we review de novo."  Ranger Ins. Co. v. Hinshaw, 103 Hawai'i 26, 30, 79 P.3d 119, 123 (2003) (quoting Molinar v. Schweizer, 95 Hawai'i 331, 334-35, 22 P.3d 978, 981-82 (2001) (citations and quotation marks omitted)).  Therefore, we also interpret the HRCP de novo. See Sierra Club v. Dep't of Transp. of State of Hawai'i, 120 Hawai'i 181, 197, 202 P.3d 1226, 1242 (2009) (citing Molinar, 95 Hawai'i at 335, 22 P.3d at 982).

It is further well established that:

> a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim that would entitle him or her to relief.  The appellate court must therefore view a plaintiff's complaint in a light most favorable to him or her in order to determine whether the allegations contained therein could warrant relief under any alternative theory.  For this reason, in reviewing a circuit court's order dismissing a complaint . . . the appellate court's consideration is strictly limited to the allegations of the complaint, and the appellate court must deem those allegations to be true.

Kealoha v. Machado, 131 Hawai'i 62, 74, 315 P.3d 213, 225 (2013) (citations and brackets omitted).

## IV.  Discussion

We accepted certiorari to address two issues: (1) the clarification of the proper standard for a HRCP Rule 12(b)(6)

18

motion to dismiss, and (2) whether a wrongful foreclosure claim exists in Hawai'i.  We discuss them in turn.

## A.    HRCP Rule 12(b)(6) Standard

The first issue requires us to review the "plausibility" pleading standard the ICA applied in affirming the dismissal of three counts of Homeowner's counterclaim pursuant to HRCP Rule 12(b)(6), which mirrors Federal Rules of Civil Procedure ("FRCP") Rule 12(b)(6).  See Reyes-Toledo, SDO at 4.  The ICA adopted this standard in Pavsek v. Sandvold, 127 Hawai'i 390, 279 P.3d 55 (App. 2012), citing to the United States Supreme Court's adoption of the standard in Twombly, 550 U.S. 544, and Iqbal, 556 U.S. 662:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact).

Pavsek, 127 Hawai'i at 403, 279 P.3d at 68 (quoting Twombly, 550 U.S. at 555).

Prior to Twombly and Iqbal, the "notice pleading" standard was applied in federal courts to determine whether a pleading can be dismissed for "failure to state a claim upon which relief can be granted" under FRCP Rule 12(b)(6).  It is also the standard this court has expressly adopted.

19

Although the "plausibility" pleading standard has not been adopted by this court,[7] the ICA has nevertheless relied on it in evaluating HRCP Rule 12(b)(6) motions to dismiss filed in unpublished cases subsequent to Pavsek. See, e.g., Bank of New York Mellon v. Mazerik, No. CAAP-14-0001100, at 5 (App. Nov. 16, 2016) (SDO), cert. denied, No. SCWC-14-0001100 (Feb 24, 2017); Abordo v. Dep't of Pub. Safety, No. CAAP-13-0005534, at 4 (SDO) (App. Feb 26, 2016); Klausmeyer-Among v. Honolulu City Council, No. CAAP-13-00001184, at 3 (App. Nov. 29, 2013) (mem.), cert. denied, No. SCWC-13-0000184 (Apr. 9, 2014); Hermano, SDO at 3. Thus, to answer whether the ICA erred in affirming the circuit court's dismissal of three counts of Homeowner's counterclaim pursuant to HRCP Rule 12(b)(6), we must determine whether our traditional "notice pleading" standard or the "plausibility" standard cited in Pavsek governs. The answer turns on the proper interpretation of HRCP Rule 8(a).

We begin with the plain language of HRCP Rule 8(a). HRCP Rule 8(a) states, in relevant part, that "a pleading which sets forth a claim for relief, whether an original claim,

---

[7] We cited to Pavsek in Hungate v. Rosen, 139 Hawai'i 394, 401, 391 P.3d 1, 8 (2017), and Kealoha v. Machado, 131 Hawai'i 62, 74, 315 P.3d 213, 225 (2013), not with respect to the "plausibility" pleading standard, but with respect to the proposition that "in weighing the allegations of [a pleading] as against a motion to dismiss, the court is not required to accept conclusory allegations on the legal effect of the events alleged." Pavsek cited to Marsland v. Pang, 5 Haw. App. 463, 474, 701 P.2d 175, 186 (1985), for that proposition, which, in turn, cited to 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure: Civil § 1357 (1969). This legal proposition is not at issue in this case.

counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief the pleader seeks." Since being promulgated and adopted in 1953,[8] we have amended HRCP Rule 8(a) only once, which was to change gendered terms. See Order Amending the Hawai'i Rules of Civil Procedure (Dec. 7, 1999) (eff. Jan. 1, 2000). Noticeably absent from Rule 8(a) is any mention of requiring "plausibility" of factual allegations, or that such allegations be "enough," or some variation of those terms.

We first interpreted HRCP Rule 8(a) in Hall v. Kim, 53 Haw. 215, 491 P.2d 541 (1971), where we explained the principles underlying the rule and motions to dismiss:

> H.R.C.P., Rule 8(a)(1) provides that a pleading for claim of relief shall contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.' It is also to be noted that Rule 8(f) reads: 'All pleadings shall be so construed as to do substantial justice.'
>
> . . . .
>
> We believe that the mandate of H.R.C.P. Rule 8(f) that 'all pleadings shall be so construed as to do substantial justice' epitomizes the general principle underlying all rules of H.R.C.P. governing pleadings, and by the adoption of H.R.C.P. we have rejected 'the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome' and in turn accepted 'the principle that the purpose of pleading is to facilitate a proper decision on the merits.'
>
> Accordingly, under Rule 8(a)(1) 'a complaint is sufficient if it sets forth 'a short and plain statement of

---

[8] See Hawai'i Rules of Civil Procedure (adopted & promulgated by the Supreme Court of the Territory of Hawai'i, Dec. 7, 1953) (eff. June 14, 1954).

21

the claim showing that the pleader is entitled to relief.'
. . . The rule is satisfied if the statement gives the
defendant fair notice of the claim and the ground upon
which it rests. . . . It is not necessary to plead under
what particular law the recovery is sought.' . . .

. . . .

'In appraising the sufficiency of the complaint we
follow, of course, the accepted rule that a complaint
should not be dismissed for failure to state a claim unless
it appears beyond doubt that the plaintiff can prove no set
of facts in support of his claim which would entitle him to
relief.' . . . Though it may be improbable for the
plaintiffs to prove their claims, they are entitled to an
opportunity to make that attempt. It is not for a court to
circumvent a determination of an action upon the merits of
the case by accepting an assertion that the claim asserted
in the complaint is groundless.

Hall, 53 Haw. at 219-22, 491 P.2d at 544-46 (citations omitted).

In other words, "[HRCP] Rule 8(a)(1) does not require the

pleading of facts; it requires a complaint to set forth 'a short

and plain statement of the claim showing that the pleader is

entitled to relief.'" Hall, 53 Haw. at 220, 491 P.2d at 545

(citations omitted)). Thus, we held whether a pleading states

evidence, facts, or conclusions of law was not dispositive. See

id.

We held to these principles in subsequent cases. See,

e.g., Au v. Au, 63 Haw. 210, 221, 626 P.2d 173, 181 (per

curiam), recon. denied, 63 Haw. 263, 626 P.2d 173 (1981) ("Thus,

Rule 8(a) H.R.C.P., requires a complaint to set forth a 'short

and plain statement of the claim. . . .' This requirement under

our pleading system provides defendant with fair notice of what

the plaintiff's claim is and the grounds upon which the claim

22

rests." (citing Conley v. Gibson, 355 U.S. 41, 47 (1957); Hall, 53 Haw. 215, 491 P.2d 541)).  It is well established that Hawai'i is a notice-pleading jurisdiction.  See, e.g., In re Genesys Data Techs., Inc., 95 Hawai'i 33, 41, 18 P.3d 895, 903 (2001) ("Hawaii's rules of notice pleading require that a complaint set forth a short and plain statement of the claim that provides defendant with fair notice of what the plaintiff's claim is and the grounds upon which the claim rests." (citations omitted)).  Under Hawaii's notice pleading approach, it is "[not] necessary to plead legal theories with . . . precision."  Leslie v. Estate of Tavares, 93 Hawai'i 1, 4, 994 P.2d 1047, 1050 (2000); see also Perry v. Planning Comm'n, 62 Haw. 666, 685, 619 P.2d 95, 108 (1980) ("Modern judicial pleading has been characterized as 'simplified notice pleading.'  Its function is to give opposing parties 'fair notice of what the . . . claim is and the grounds upon which it rests.'" (citing Gibson, 355 U.S. at 47)).

Next, we examine the purpose and history of HRCP Rule 8(a).  The purpose of HRCP Rule 8(a)(1) is to "give[] the defendant fair notice of the claim and the ground upon which it rests."  Hall, 53 Haw. at 221, 491 P.2d at 545 (citation omitted).  Further, we have stated that "[w]e believe that the mandate of H.R.C.P. Rule 8(f) that 'all pleadings shall be so construed as to do substantial justice' epitomizes the general principle underlying all rules of H.R.C.P. governing pleadings, and by the

23

adoption of H.R.C.P. we have rejected 'the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome' and in turn accepted 'the principle that the purpose of pleading is to facilitate a proper decision on the merits.'" Id. (quoting Gibson, 355 U.S. at 48).

Finally, we turn to the context of HRCP Rule 8(a). See Moana v. Wong, 141 Hawai'i 100, 109, 405 P.3d 536, 545 (2017) ("It is well established that the interpretation of rules promulgated by the supreme court involves principles of statutory construction." (quoting State v. Bohannon, 102 Hawai'i 228, 240, 74 P.3d 980, 992 (2003)); Cty. of Kaua'i v. Hanalei River Holdings Ltd., 139 Hawai'i 511, 519, 394 P.3d 741, 749 (2017) ("When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose." (citation omitted)). As previously discussed, HRCP Rule 8(a) is devoid of any mention of facts, specificity, or plausibility. Moreover, when the HRCP require a pleading to have specificity, they expressly state so. For example, HRCP Rule 9, titled "Pleading Special Matters," offers examples of when specificity is required; HRCP Rule 9(b), titled "Fraud, mistake, condition of the mind," requires that

"[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Similarly, HRCP Rule 9(c)[9] and HRCP Rule 9(g)[10] require specificity. In contrast, HRCP Rule 8(a), as well as HRCP Rule 13 (governing counterclaims and cross-claims), are devoid of any mention of specificity or particularity.

In addition, the HRCP also provides a mechanism for dealing with any lack of clarity resulting from our preference for notice pleading under HRCP Rule 8. HRCP Rule 12(e), titled "Motion for more definite statement," states that "[a] party may move for a more definite statement" if a pleading is "so vague and ambiguous that a party cannot reasonably be required to frame a responsive pleading." The motion under HRCP Rule 12(e) "shall point out the defects complained of and the details desired." HRCP Rule 12(e). Thus, under HRCP Rule 12(e), a court may order that any "vague or ambiguous" pleadings be cured; should a party fail to comply, the court may also strike

---

[9]  HRCP Rule 9(c), titled "Conditions precedent," reads: "In pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions have been performed or have occurred. A denial of performance or occurrence shall be made specifically and with particularity."

[10]  HRCP Rule 9(g), titled "Special Damage," reads: "When items of special damage are claimed, they shall be specifically stated."

the pleading to which the motion was directed or issue other orders as deemed just.

Lastly, the HRCP are to "be construed and administered to secure the just, speedy, and inexpensive determination of every action." HRCP Rule 1. The framework for our rules of civil procedure support notice pleading, as our rules contain a variety of methods to determine the merits of a case. See Hall, 53 Haw. at 218, 491 P.2d at 544 ("Such simplified 'notice pleading' is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues." (quoting Gibson, 355 U.S. at 47-48) (construing the federal rule that is analogous to HRCP Rule 8(a)))). For example, HRCP Rule 26 gives the trial court wide discretion in managing discovery to "secure the just, speedy, and inexpensive determination of every action," HRCP Rule 1, as HRCP Rule 26(b)(2) "secure[s] the just, speedy, and inexpensive determination of every action" by limiting the frequency or extent of the discovery methods used.[11]

---

[11]    Limitations. By order, the court may alter the limits in these rules on the number of depositions and interrogatories or the length of depositions under Rule 30. By order, the court may also limit the number of requests under Rule 36. The frequency or extent of use of the discovery methods otherwise permitted under these rules

(continued. . .)

26

Notably, our case law cites heavily to Conley v. Gibson, 355 U.S. 41, 47 (1957).  For many years the Supreme Court of the United States similarly interpreted FRCP Rule 8(a)(2), the federal counterpart to HRCP Rule 8, as requiring a complaint to provide notice of the plaintiff's claim and the grounds upon which it rests.  But in 2007 with the issuance of Twombly, the Court expanded the requirements imposed on a complaint by FRCP Rule 8(a)(2).  As the ICA in Pavsek cited to Twombly for its standard, it is important that we discuss Gibson, 355 U.S. 41, and its progeny.

In Gibson, the Court addressed what became known as the "no set of facts" standard.  See 355 U.S. at 44.  The Supreme Court held, among other things, the petitioners' complaint containing general allegations survived a motion to dismiss because the FRCP did not require claimants to set out detailed facts for the basis of their claim.  See 355 U.S. at 47.  The Court stated it

(. . .continued)
shall be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, limitations on the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.  The court may act upon its own initiative after reasonable notice or pursuant to a motion under Rule 26(c).

HRCP Rule 26(b)(2).

followed the accepted rule that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. at 45-46 (footnote omitted). Further, the Court reasoned the FRCP only required a "'short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." 355 U.S. at 47 (footnote omitted). Following the "simple guide" of FRCP Rule 8(f) that "all pleadings shall be so construed as to do substantial justice," the Court concluded the FRCP rejected the approach that "pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." 355 U.S. at 48 (citation omitted).

The Court abrogated Gibson in Twombly, however, holding that a "plausibility" standard governed pleadings of a complaint alleging an antitrust conspiracy. Twombly, 550 U.S. at 555–57. In this context, the Court stated the pleading must contain "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 570. Further, the Court stated it is not sufficient for the pleading to contain mere "labels and conclusions [or] a formulaic recitation of the elements of a cause of action." 550 U.S. at 555. To survive a motion for

28

dismissal, the "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Id.

Justice Stevens, joined by Justice Ginsburg, dissented in Twombly.  See 550 U.S. at 570-97.  Pointing out that the plausibility standard was an evidentiary standard, Justice Stevens stated that the plausibility standard contradicted what the FRCP intended to codify.  See 550 U.S. at 580.  He explained: "Under the relaxed pleadings standards of the Federal Rules, the idea was not to keep litigants out of court but rather to keep them in.  The merits of a claim would be sorted out during a flexible pretrial process and, as appropriate, through the crucible of trial."  550 U.S. at 575.  Justice Stevens noted that twenty-six States and the District of Columbia utilized the Gibson Court's language of "whether it appears 'beyond doubt' that 'no set of facts' in support of the claim would entitle the plaintiff to relief."  550 U.S. at 578 (footnote omitted).

Two years after Twombly, the Supreme Court clarified the plausibility standard in Ashcroft v. Iqbal, 556 U.S. 662 (2009).  The Court held that the Twombly plausibility standard was not limited to complaints in the antitrust conspiracy context, but instead, was applicable to "all civil actions and proceedings in the United States district courts."  Iqbal, 556 U.S. at 678-80, 684 (quoting FRCP Rule 1).  The Court explained the two

29

principles in Twombly underlying the plausibility standard:
first, "the tenet that a court must accept as true all of the
allegations contained in a complaint is inapplicable to legal
conclusions," and second, "only a complaint that states a
plausible claim for relief survives a motion to dismiss."
Iqbal, 556 U.S. at 678-79 (citing Twombly, 550 U.S. at 555-56).
The Court explained that "[d]etermining whether a complaint
states a plausible claim for relief will . . . be a context-
specific task that requires the reviewing court to draw on its
judicial experience and common sense." Id. (citation omitted).
Further, the Court stated that if "the well-pleaded facts do not
permit a court to infer more than the mere possibility of
misconduct, the complaint has alleged — but it has not 'shown' —
'that the pleader is entitled to relief.'" Id. (quoting FRCP
Rule 8(a)(2)) (brackets omitted).

Although "[t]he advent of plausibility pleading in Twombly
and Iqbal was motivated in significant part by a desire . . . to
deter allegedly abusive practices . . . and to contain costs,"
when compared to the "notice pleading" standard, the
"plausibility" pleading standard is restrictive as it results in
decreased access to the courts for citizens. Arthur R. Miller,
From Conley to Twombly to Iqbal: A Double Play on the Federal
Rules of Civil Procedure, 60 Duke L.J. 1, 21 & n.67 (2010)
("[T]he perception among many practicing attorneys and

commentators is that the grant rate [for motions to dismiss] has increased, particularly in civil rights cases, employment discrimination, private enforcement matters, class actions, and proceedings brought pro se.  Some initial empirical evidence supports these impressions.").

Indeed, when the FRCP was promulgated in 1938, "[t]he rulemakers believed in citizen access to the courts and in the resolution of disputes on their merits," and therefore had "established a relatively plainly worded, non-technical procedural system."  Arthur R. Miller, <u>Are the Federal Courthouse Doors Closing?  What's Happened to the Federal Rules of Civil Procedure?</u>, 43 Tex. Tech. L. Rev. 587, 587–88 (2011) (footnotes omitted); <u>see</u> <u>also</u> <u>Twombly</u>, 550 U.S. at 573 (Stevens, J., dissenting) ("Rule 8(a)(2) of the Federal Rules requires that a complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'  The Rule did not come about by happenstance, and its language is not inadvertent.  [In contrast to hypertechnical English pleading rules, the Rule intended to set forth] a pleading standard that was easy for the <u>common litigant</u> to understand and sufficed to put the defendant on notice as to the nature of the claim against him and the relief sought." (emphasis added)).  Just like Hawaii's "notice pleading" standard, "[t]he [Federal] Rules had a notice pleading regime that abjured factual detail and

verboseness."  See Miller, 43 Tex. Tech. L. Rev. at 588 (citing Gibson, 355 U.S. 41).

The "plausibility" pleading standard, i.e., "fact pleading by another name," however, has effectively "tak[en] federal civil practice back toward code and common law procedure and their heavy emphasis on detailed pleadings and frequent resolution by a demurrer to the complaint or code motion to dismiss."  Miller, 60 Duke L.J. at 21.  Indeed, Twombly suggests "parity between the level of scrutiny applied to claims at the Rule 12(b)(6) and Rule 56 stages — with the only distinction being that between alleged facts and evidenced facts . . . ." A. Benjamin Spencer, Plausibility Pleading, 49 B.C. L. Rev. 431, 487 (2008); see also Twombly, 550 U.S. at 586 (Stevens, J., dissenting) ("Everything today's majority says would therefore make perfect sense if it were ruling on a Rule 56 motion for summary judgment and the evidence included nothing more than the Court has described.  But it should go without saying . . . that a heightened production burden at the summary judgment stage does not translate into a heightened pleading burden at the complaint stage.").  This "approach [is] wholly out of line with the original liberal vision of the rules and would ultimately saddle plaintiffs in disfavored actions like antitrust and civil rights claims with burdens they will have difficulty meeting." Spencer, 49 B.C. L. Rev. at 488 (footnotes omitted).

32

Furthermore, "[s]ince Iqbal, what constitutes ample facts, and whether those facts appear plausible, are matters left to the presiding judge's discretion — whereas one judge may subjectively regard a claim as fanciful or implausible, another may permit a similar claim to proceed."  Ramzi Kassem, Implausible Realities:  Iqbal's Entrenchment of Majority Group Skepticism Towards Discrimination Claims, 114 Penn St. L. Rev. 1443, 1465 (2010).

For all of these reasons, the ICA's adoption of the Pavsek "plausibility" standard is contrary to our well-established historical tradition of liberal notice pleading and undermines citizen access to the courts and to justice.  Instead of deeming the factual allegations as true as we have consistently held to govern HRCP Rule 12(b)(6) motions to dismiss, the standard in Pavsek results in factual weighing by the trial court, resulting in inconsistent application.

For approximately seventy years, we have upheld our liberal notice pleading standard.  See, e.g., Kawakami v. Kahala Hotel Investors, LLC, 142 Hawaiʻi 507, 518, 421 P.3d 1277, 1288 (2018) ("Under our rules, a complaint is good if it contains a short and plain statement of the claim showing that the pleader is entitled to relief." (quoting Yap v. Wah Yen Ki Tuk Tsen Nin Hue of Honolulu, 43 Haw. 37, 39 (Haw. Terr. 1958)); Laeroc Waikiki Parkside, LLC v. K.S.K. (Oahu) Ltd., 115 Hawaiʻi 201, 166 P.3d

961 (2007) (citing In re Genesys Data Techs., Inc., 95 Hawai'i at 41, 18 P.3d at 903; Au, 63 Haw. at 220-21, 626 P.2d at 181)); Hall, 53 Haw. at 221, 491 P.2d at 545; Midkiff v. Castle & Cooke, Inc., 45 Haw. 409, 413-16, 368 P.2d 887, 890-92 (1962). Courts should "not depart from the doctrine of stare decisis without some compelling justification." State v. Garcia, 96 Hawai'i 200, 206, 29 P.3d 919, 925 (2001) (quoting Hilton v. South Carolina Pub. Ry. Comm'n, 502 U.S. 197, 202 (1991)) (emphasis in original). Not once have we questioned, or found ambiguous, our standards for HRCP Rule 8(a) and a motion to dismiss. If a complaint meets the requirements of HRCP Rule 8(a), dismissal pursuant to HRCP Rule 12(b)(6) is appropriate where "the allegations of the complaint itself clearly demonstrate that plaintiff does not have a claim," Touchette v. Ganal, 82 Hawai'i 293, 303, 922 P.2d 347, 357 (1996), and in weighing the allegations of the complaint as against a motion to dismiss, the court "will not accept conclusory allegations concerning the legal effect of the events the plaintiff has [alleged]." 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at pp. 548-53 (3d ed. 2004).

Although Twombly and Iqbal are persuasive in interpreting and applying HRCP Rule 8, we are not bound by the Supreme Court's interpretation of an analogous federal rule. See, e.g., Kawamata Farms, Inc. v. United Agri Products, 86 Hawai'i 214,

34

251-52, 948 P.2d 1055, 1092-93 (1997) ("[N]otwithstanding their persuasiveness, interpretations of the FRCP by federal courts are by no means conclusive with respect to our interpretation of any rule within the HRCP."); Roxas v. Marcos, 89 Hawai'i 91, 119, 969 P.2d 1209, 1237 (1998) (noting that although HRCP Rule 25 was "nearly identical to its federal counterpart," the rules "are not coextensive, and the federal court's interpretation of the federal rule is not binding on Hawaii's interpretation of its own rule"). See also Hawai'i Const. art. VI, § 7 ("The supreme court shall have power to promulgate rules and regulations in all civil and criminal cases for all courts relating to process, practice, procedure and appeals, which shall have the force and effect of law."). We find no reason to depart from our established precedent in evaluating an HRCP Rule 12(b)(6) motion to dismiss. Accordingly, we reject the ICA's standard in Pavsek and clarify that our well-established notice pleading standard governs in Hawai'i.

Having reaffirmed our traditional notice pleading standard, we now turn to the issue of whether the ICA erred in affirming the circuit court's dismissal of three counts of Homeowner's counterclaim.

**B. Wrongful Foreclosure Claim**

In the following analysis, we first address whether the ICA erred in concluding there must first be a foreclosure before a

wrongful foreclosure claim can be brought.  We then apply the traditional notice pleading standard to determine whether the circuit court erred in dismissing Homeowner's wrongful foreclosure claim.

Although we have not previously squarely addressed whether a wrongful foreclosure counterclaim may be brought in a judicial foreclosure case when no foreclosure or sale of the property has yet occurred, upon careful review, we hold that such a wrongful foreclosure claim exists in Hawai'i.  We base our conclusion on our past consideration of potential circumstances in which a wrongful foreclosure claim may exist in non-judicial foreclosures.  See Hungate, 139 Hawai'i at 407, 391 P.2d at 14 (holding there was no need to create a cause of action against a foreclosing mortgagee's attorney under former HRS § 667-5 concerning non-judicial foreclosures as "the mortgagor can protect its interest through filing a claim against the mortgagee for wrongful foreclosure"); Santiago, 137 Hawai'i at 157-58, 366 P.3d at 632-33 (holding the mortgagee's non-judicial foreclosure of the mortgagors' property after the mortgagors cured their default was wrongful); Mount v. Apao, 139 Hawai'i 167, 180, 384 P.3d 1268, 1281 (2016) (concluding the mortgagee's non-judicial foreclosure violated former HRS § 667-5(c)(1) and was, therefore, wrongful).  We see no reason why a different standard should exist for judicial foreclosures.

36

In Reyes-Toledo I, we recognized and discussed the problems associated with modern mortgage securitization practices.  See Reyes-Toledo I, 139 Hawai'i at 369 & n.14, 390 P.3d at 1256 & n.14.  We noted that "[t]he requirement that a foreclosing plaintiff prove its entitlement to enforce the note at the commencement of the proceedings 'provides strong and necessary incentives to help ensure that a note holder will not proceed with a foreclosure action before confirming that it has a right to do so.'"  Id. (citations omitted).  "Basic requirements of Hawaii's Uniform Commercial Code and our law on standing should not be modified, especially in light of the widespread problems created by the securitization of mortgages, because a requirement that seems to be merely technical in nature may serve an essential purpose."  Id.  "[T]he possession requirement, which applies unless a specific statutory exception exists, protects the maker of an instrument from multiple enforcements of the same instrument."  Id. (citing Hanalei, BRC Inc. v. Porter, 7 Haw. App. 304, 308, 760 P.2d 676, 679 (1988)).  Accordingly, a foreclosing plaintiff must prove "the existence of an agreement, the terms of the agreement, a default by the mortgagor under the terms of the agreement, and giving of the cancellation notice," as well as prove entitlement to enforce the defaulted upon note.  Reyes-Toledo I, 139 Hawai'i at 367–68, 390 P.3d at 1254-55.

37

It follows that if a foreclosing plaintiff does not prove the aforementioned elements and commences a foreclosure action, the mortgagor should be able to challenge the lawsuit without having to await a foreclosure decree. Indeed, other jurisdictions have held that a party may not foreclose without having the legal power to do so.[12] See, e.g., Barrionuevo v. Chase Bank, N.A., 885 F. Supp. 2d 964, 974 (N.D. Cal. 2012) (holding the mortgagors stated a claim of wrongful foreclosure against the bank, trustee under a deed of trust, and others by alleging the defendants were not current beneficiaries under the deed of trust); 100 Lakeside Trail Trust v. Bank of America, N.A., 804 S.E.2d 719, 725 (Ga. App. 2017) (noting that under Georgia law, "an attempted wrongful foreclosure claim exists when, in the course of a foreclosure action that was not completed, a defendant makes a knowing and intentional publication of untrue and derogatory information concerning the debtor's financial condition, and damages were sustained as a direct result of the publication" (citation and brackets omitted)); Fields v. Millsap & Singer, P.C., 295 S.W.3d 567, 571

---

[12] Generally, if a foreclosure is conducted negligently or in bad faith to the detriment of the mortgagor, the mortgagor may assert a claim of wrongful foreclosure by establishing the following elements: (1) a legal duty owed to the mortgagor by the foreclosing party; (2) a breach of that duty; (3) a causal connection between the breach of that duty and the injury sustained; and (4) damages. See James Buchwalter et al., 59 C.J.S. Mortgages § 650 (2009). However, an action for damages against the mortgagee "lies . . . only when the mortgagee had no right to foreclose at the time foreclosure proceedings were commenced." Id. (footnote omitted).

(Mo. Ct. App. 2009) (stating "[a] tort action for damages for wrongful foreclosure lies against a mortgagee only when the mortgagee had no right to foreclose at the time foreclosure proceedings were commenced," but "[i]f the right to foreclose existed, no tort cause of action for wrongful foreclosure can be maintained" (citation omitted)); Gregorakos v. Wells Fargo Nat'l Ass'n, 647 S.E.2d 289, 292 (Ga. App. 2007) (stating that in Georgia, "a plaintiff asserting a claim of wrongful foreclosure must establish a legal duty owed to it by the foreclosing party, a breach of that duty, a causal connection between the breach of that duty and the injury it sustained, and damages" (citation and brackets omitted)); McKnight Family, L.L.P. v. Adept Mgmt., 310 P.3d 555, 559 (Nev. 2013) (stating a wrongful foreclosure claim challenges the authority behind the foreclosure, not the foreclosure act itself).  Thus, we hold that a mortgagor may bring a wrongful foreclosure claim before a foreclosure decree is entered.

Therefore, to assert a wrongful foreclosure claim, the foreclosing plaintiff must have failed to establish its standing as required by Reyes-Toledo I and the mortgagor must have suffered an "injury in fact" and damages as a result.  As explained above, a mortgagor need not wait for a foreclosure decree to assert a wrongful foreclosure claim.  If a party with no authority or standing files a foreclosure action, no

39

foreclosure decree would result, yet the mortgagor would have spent time and incurred expenses to defend against such a lawsuit. Allowing a mortgagor to bring a wrongful foreclosure counterclaim without awaiting an actual foreclosure benefits judicial economy and efficiency, as a foreclosure defendant should not have to institute a separate legal action after the pending foreclosure case is decided. Accordingly, a mortgagor should be able to assert a counterclaim for wrongful foreclosure based on the underlying facts of the pending foreclosure case. However, we emphasize this does not mean a mortgagor must assert the wrongful foreclosure claim as a compulsory counterclaim.

Here, it remains an issue of fact whether Bank of America attempted to foreclose on Homeowner's Property without standing to do so. See Reyes-Toledo I, 139 Hawai'i at 371, 390 P.3d at 1258 ("A foreclosing plaintiff's burden to prove entitlement to enforce the note overlaps with the requirements of standing in foreclosure actions as '[s]tanding is concerned with whether the parties have the right to bring suit.'" (citation omitted)). As a result of defending against Bank of America's lawsuit, Homeowner alleged she incurred costs and expenses. Thus, the ICA erred when it concluded Homeowner did not yet have a claim for wrongful foreclosure against Bank of America.

We next address whether Homeowner's wrongful foreclosure count was properly dismissed by the circuit court, which the ICA

40

affirmed applying the incorrect "plausibility" pleading standard. By incorporating the defenses in her Answer into her wrongful foreclosure count, Homeowner asserted Bank of America was not the real party-in-interest, owner, holder, or holder in due course of the Note and Mortgage. She also asserted there was "no valid negotiation for value of [her] promissory note to [Bank of America]." She argued that, therefore, "[Bank of America]'s conduct in commencing this case was willful, malicious, without just cause," and she was entitled to "general, special, and punitive damages in an amount to vest this Court with jurisdiction."

Taking Homeowner's allegations as true, as we must in evaluating a Rule 12(b)(6) motion to dismiss, the wrongful foreclosure count within her counterclaim satisfies HRCP Rule 8(a) and our traditional notice pleading standard. There is an issue of fact regarding whether Bank of America had standing prior to commencing the lawsuit, and Homeowner has provided notice through her allegations that, if not, Homeowner has been injured, establishing a claim for damages. Thus, Homeowner's wrongful foreclosure count should not have been dismissed.

C.  **Declaratory Judgment Claim**

Homeowner's declaratory judgment count, which incorporated by reference the allegations set forth in her wrongful foreclosure count, asserted she was entitled to declaratory

41

relief under HRS § 632-1. On remand, it appears the ICA based its analysis on the Pavsek standard, and seemed to assume as true the assertions with respect to the parties and assignment documents contained in Bank of America's Complaint, as opposed to the Counterclaim filed by Homeowner. Additionally, the ICA focused solely on issues regarding MERS raised in Bain, and disregarded Homeowner's remaining assertions in her declaratory judgment count of her counterclaim.

As Homeowner argues, the declaratory judgment count also asserted: (1) Bank of America was not the owner and holder of the Mortgage and Note; (2) Bank of America was not entitled to foreclose on the Mortgage and Note; (3) MERS was not the mortgagee on the Mortgage but rather was a "sham and fraud" and MERS "acted only as a strawman"; (4) the court should decide who is the mortgagee on the Mortgage and the Note; and (5) Homeowner can recover costs and attorney's fees pursuant to HRS § 607-14. Applying HRCP Rule 8(a)'s notice pleading standard, Homeowner's declaratory judgment count provided sufficient notice of her claim and should not have been dismissed pursuant to HRCP Rule 12(b)(6). Taking the allegations asserted by Homeowner as true, it does not appear beyond doubt that Homeowner could not prove a set of facts entitling her to relief. Thus, the ICA erred in affirming the circuit court's dismissal of the declaratory judgment count within Homeowner's counterclaim.

**D.   Quiet Title Claim**

Homeowner also incorporated by reference the allegations in her wrongful foreclosure count into her quiet title count. Stating she was the owner of the Property, she sought to quiet title to the Property against Bank of America's adverse claim, asserting Bank of America was not the mortgagee.  Accepting Homeowner's allegations as true, she has satisfied HRCP Rule 8(a)'s pleading requirements by asserting that she has a substantial interest in the Property, and that her interest in the Property is greater than Bank of America's.  See Ka'upulehu Land LLC v. Heirs & Assigns of Pahukula, 136 Hawai'i 123, 137, 358 P.3d 692, 706 (2015) ("While it is not necessary for the plaintiff to have perfect title to establish a prima facie case, he must at least prove that he has a substantial interest in the property and that his title is superior to that of the defendants." (quoting Maui Land & Pineapple Co., 76 Hawai'i at 408, 879 P.2d at 513)).  If Bank of America is indeed not the mortgagee, Homeowner's quiet title count states a claim upon which relief can be granted.  Thus, we conclude the ICA erred in affirming the circuit court's dismissal of the quiet title count within her counterclaim.

## V.   Conclusion

For the foregoing reasons, the ICA erred in affirming the circuit court's dismissal of the remaining three counts of

43

Homeowner's counterclaim because the assertions satisfied our traditional notice pleading standard.  Accordingly, we vacate the ICA's Judgment on Remand.  We also vacate the circuit court's Order Dismissing Counterclaim and Order Denying Motion for Reconsideration to the extent it denied reconsideration of the Order Dismissing Counterclaim,[13] and we remand to the circuit court for further proceedings consistent with this opinion.

R. Steven Geshell
for petitioner

Jade Lynne Ching,
Nakashima Ching LLC
for respondent

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson

/s/ Colette Y. Garibaldi



---

[13]   In light of Reyes-Toledo I setting aside the grant of summary judgment of foreclosure in favor of Bank of America, our holding to reinstate the remaining three counts of Homeowner's counterclaim, and the ICA's decision to reinstate the UDAP count, which was not challenged by Bank of America, we need not address the remaining issue in Homeowner's Application regarding the circuit court's refusal "to allow [Homeowner] to use her home as the supersedeas bond."